[L. A. No. 4952. Department One.—August 29, 1919.]

FRITZ WERNER, Appellant, v. MARY M. GRAHAM et al., Respondents.

[1] DEED—BUILDING RESTRICTIONS—QUITCLAIM OF INTEREST—RELEASE OF RESTRICTIONS.—Where the owner of a tract of land subdivided it into lots and blocks and made sales of the lots subject to certain building restrictions, and thereafter quitclaimed to the owner of one of the lots any interest he had therein, the effect of the deed was to release the restrictive provisions as to such lot so far as it was in the power of the original owner to do so.

[2] ID.—ENFORCEMENT OF BUILDING RESTRICTIONS—RIGHT OF OTHER LOT OWNERS—RESTRICTIONS AS CONDITIONS.—Where a deed containing building restrictions provides that the property conveyed shall revert to the grantor, his heirs or assigns in case of a breach of the restrictions, such provisions, if in fact conditions and not covenants, cannot be enforced by other lot owners under deeds from the same grantor and containing the same restrictions, against a lot owner who subsequent to his deed obtained from the original grantor a quitclaim deed to all his interest in the lot, for such reversion clause only runs in favor of the grantor, since by "assigns" is meant the assignees of the reversion or right of re-entry.

[3] ID.—RESTRICTIONS AS COVENANTS.—Under such a deed, if such restrictive provisions amount to covenants, as well as conditions, there is no privity of contract between such lot owner and the other lot owners, nor is there privity of estate, at least in the usual sense of the word, for neither holds under or through the others, and the restrictions are not covenants running with the land, nor for the benefit of the estate conveyed but to its detriment.

[4] ID.—ENFORCEMENT OF COVENANTS—ESSENTIALS.—In order that such restrictions have force, not merely as between the original parties, but as between such lot owner and the other lot owners, it must appear that their insertion in the deed by the original grantor was, in effect, the creation of what amounts to a servitude, to the burden of which the lot was subjected as the servient tenement, and to the benefit of which the remainder of the tract was entitled as the dominant tenement.

[5] ID.—EQUITABLE EASEMENTS—ORIGIN.—The enforcement of covenants restricting the use of one parcel of land for the benefit of another parcel, not merely as between the original parties, but as between their respective grantees between whom no privity of estate or of contract can properly be said to exist, originated at a comparatively recent date in the chancery courts and apparently without a clear appreciation of the fact that the enforcement of such covenants for and against grantees of the original parties was, in effect, the creating of servitudes.

[6] ID.—ENFORCEMENT OF EQUITABLE SERVITUDES.—Such servitudes frequently spoken of as "equitable easements" are opposed to the rule that the owner of land may not create new and heretofore unknown estates, and their enforcement is limited to those which directly concern and benefit the dominant tenement, and any provisions of an instrument creating or claiming to create such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land.

[7] ID.—EQUITABLE SERVITUDE—WHEN NOT CREATED.—A servitude running with the land in favor of one parcel and against another is not created where the owner of a tract of land sells a portion of it, exacting of the grantee restrictive provisions as to its use, but without a word indicating that the land conveyed is a part of a larger tract, the balance of which the grantor still retains, or that the restrictions are intended for the benefit of other lands, or that their benefit is to inure to or pass with other lands, and without any description or designation of the land which is to be the dominant tenement.

[8] ID.—CREATION OF MUTUAL EQUITABLE SERVITUDES.—When the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others, for the agreement between the grantor and each grantee in such a case as expressed in the instruments between them is both that the parcel conveyed shall be subject to restrictions in accordance with the plan for the benefit of all the other parcels

and also that all other parcels shall be subject to such restrictions for its benefit.

[9] ID.—TIME OF CREATION.—In such a case the mutual servitudes spring into existence as between the first parcel conveyed and the balance of the parcels at the time of the first conveyance, and as each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding conveyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still retained by the original owner.

[10] ID.—CREATION OF EQUITABLE SERVITUDES—JOINT INTENT OF PARTIES.—Where the owner of a tract of land sells a lot subject to building restrictions, but without any language in the deed which refers to a common plan of restrictions or which expresses or in any way indicates an agreement between grantor and grantee that the lot conveyed is taken subject to any such plan, it is immaterial, as affecting the question whether the restriction runs personally to the owner and not to the owners of other lots in the tract, that the owner in selling lots from time to time in each conveyance has exacted restrictive covenants, evidently in accord with a common plan. It is not the grantor's intent alone that governs, but the joint intent of himself and his grantees, and such intent must be expressed in the instruments which constitute the final memorials of their understanding.

[11] ID.—JUDGMENT—QUIETING TITLE—RIGHT OF PLAINTIFF.—In an action to quiet title against building restrictions, a judgment which goes further than denying plaintiff relief and affirmatively makes his title subject to the restrictions cannot be justified on the ground that the action of the plaintiff in seeking to escape from the restrictions is inequitable, where such restrictions do not in fact exist,

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Wellborn, Judge. Reversed.

The facts are stated in the opinion of the court.

E. W. Sargent, W. G. Cooke and John F. Keogh for Appellant.

Nathan Newby and Hugh A. McNary for Respondents.

OLNEY, J.—This is an action to quiet title to real property, the purpose being to obtain a judicial determination that the land of the plaintiff is free of certain restrictions as to its

use contained in a deed to a previous owner through whom the plaintiff claims. The land consists of one of the lots of a considerable tract and the defendants are other lot owners within the same tract. The judgment of the lower court was that the plaintiff's title was as to all the defendants, subject to the restrictions in question, and from this judgment the plaintiff appeals.

It appears that one Marshall was, in 1902, the owner of the whole tract, which was at that time unimproved and in that year he subdivided it into blocks and lots and filed of record a map of the tract as so subdivided. This map showed no building lines or anything else to indicate any purpose of restricting in any way the manner in which the different lots might be built upon or otherwise improved or the uses to which they might be put. Immediately following the recording of the map Marshall began to sell and convey the lots. There were 132 lots in all and by October 21, 1905, he had sold and conveyed 116 of them, including the lot now owned by the plaintiff. In all of the deeds from Marshall appear restrictive provisions, which, while differing slightly in some instances, dependent upon the location of the particular lot, as, for instance, upon its facing east or west, are yet so uniform and consistent in character as to indicate unmistakably that Marshall had in mind a general and common plan which he was following. The restrictions in the deed by Marshall conveying the plaintiff's lot are typical and read:

"Provided, however, that this conveyance is made upon and shall be subject to the following express conditions, to wit: That no building to be used as a saloon, or tenement houses known as flats, or livery stable, or store of any kind or nature whatever shall be erected or placed on said premises or any part thereof, nor shall any such business be conducted on said premises or any part thereof at any time within thirty (30) years from the date hereof; that no derrick for boring any oil well shall be erected or placed, nor shall oil be produced in any manner whatsoever, on said premises or any part thereof at any time within fifty (50) years from the date hereof; and also that any buildings to be used as dwelling houses which may be erected or placed upon said premises or any part thereof at any time within twenty-five (25) years from the date hereof, shall be located and placed as follows:

CLXXXI Cal.—12

"On lots numbered thirty-four (34), thirty-five (35), seventy-eight (78), seventy-nine (79), one hundred and twenty-two (122) and one hundred and twenty-three (123) facing east, and on lots numbered seventy-six (76), seventy-seven (77), one hundred and twenty (120) and one hundred and twenty-one (121) facing west. And the reasonable cost thereof shall not be less than three thousand ($3,000.00) dollars; and said dwelling and its appurtenances shall be located not less than forty (40) feet from the front property line of said premises; and not more than one house and its appurtenances shall be built or placed on each lot herein conveyed. If the said party of the second part, his heirs, assigns or successors in estate, shall in any way fail to keep or perform the conditions above specified, or any one of them, in any respect whatsoever, then any and all right, title, interest and estate hereby granted or conveyed shall revert to and become vested in the said parties of the first part, their heirs or assigns.

"The said party of the second part accepts this deed and conveyance upon and subject to each and all of the said conditions herein set forth. It is further understood and agreed that each and all of said conditions and covenants shall run with said premises and shall be binding upon the heirs, assigns and all successors in estate of the said party of the second part."

Some of the conveyances so made by Marshall were prior to his conveyance of the plaintiff's lot and some of the defendants are now the owners of lots so previously conveyed. The larger number of conveyances were made subsequent to the deed through which the plaintiff claims title, and others of the defendants are now the owners of lots so subsequently conveyed.

On October 21, 1905, when, as we have said, Marshall had sold 116 out of a total of 132 lots in the tract, Marshall quit-claimed to the then owner of the plaintiff's lot any interest in it. [1] The effect of this deed was, of course, to release the restrictive provisions as to the plaintiff's lot so far as it was in the power of Marshall to release them.

After the giving of this quitclaim deed Marshall continued to sell lots until he had disposed of them all. The deeds for these lots likewise contain the restrictive provisions. It does not appear clearly whether or not any of the defendants are

the present owners of lots conveyed by Marshall subsequent to his quitclaim deed, but we assume some of them are.

It also appears in evidence that in selling the lots Marshall represented to the respective purchasers that he was exacting the same restrictive provisions from all purchasers. Residences were built upon the tract from time to time by purchasers of lots, and the tract became, and has remained, an exclusively residence district of the better sort.

It should also be mentioned that the immediate deed by which the plaintiff acquired title contained no restrictions. It is claimed by the defendants that he nevertheless had actual notice that all of the lots in the tract were subject to uniform restrictions according to a general and common plan. This the plaintiff denies, but in view of the conclusion we have reached it is of no importance whether he had such notice or not.

It should also be noted that the restrictions are cast in the form of conditions and not of covenants, that is, the conveyance by its terms is made upon the condition that so and so shall not be done, and if it is done the property conveyed shall revert. In the last paragraph of the restrictive provisions they are referred to as "conditions and covenants," but this single expression is the only language of obligation, as distinguished from that of condition, and essentially the form is one of condition and not of covenant. [2] If the provisions are in fact conditions and not covenants, the defendants are not entitled to enforce them against the plaintiff, for the reversion clause runs in favor of Marshall, his heirs and assigns, and does not include the defendants, since by assigns must be meant in this state assignees of the reversion or right of re-entry. (Civ. Code, secs. 768, 1046; *Johnston v. Los Angeles,* 176 Cal. 479, 485, [168 Pac. 1047].)

[3] Assuming, however, for the purpose of discussion, that the restrictive provisions in the deed amount to covenants, as well as conditions, there is yet no privity of contract between the plaintiff and the defendants. Neither the plaintiff nor any of the defendants were original parties to the covenants, nor has the plaintiff contractually assumed their obligations, nor have the defendants acquired by assignment from Marshall his rights as covenantee. Marshall has in fact surrendered those rights.

Likewise there is no privity of estate between the plaintiff and the defendants, at least in the usual sense of the word. The plaintiff does not hold under or through any of the defendants, nor any of them under or through him. It follows that the covenants are not covenants recognized by the common law as running with the land, such as covenants between lessor and lessee, or between grantor and grantee for the benefit of the estate conveyed, as, for instance, warranties of title, for all of which a privity of estate is required. Furthermore, the covenants here involved are manifestly not for the benefit of the estate conveyed, but to its detriment.

If, then, these covenants are to be given force, as between the plaintiff and the defendants, it clearly must be because: (a) The burden imposed by them was one upon the land conveyed and incident to its ownership, so that the plaintiff, when he acquired his lot, acquired it subject to such burden; and (b) the benefit of the covenants was an incident of the ownership of the other lots in the tract, so that when Marshall parted with them the benefit of the covenants passed with them as an incident of their ownership and the defendants are now entitled to such benefit as the present owners of the lots. [4] In other words, in order that the covenants have force, not merely as between the original parties, but as between the plaintiff and the defendants, it must appear that their insertion in the deed by Marshall was, in effect, the creation of what amounts to a servitude, to the burden of which the plaintiff's lot was subjected as the servient tenement, and to the benefit of which the remainder of the tract was entitled as the dominant tenement.

[5] The enforcement of covenants restricting the use of one parcel of land for the benefit of another parcel, not merely as between the original parties, but as between their respective grantees between whom no privity of estate or of contract can properly be said to exist, originated at a comparatively recent date in the chancery courts and apparently without a clear appreciation of the fact that the enforcement of such covenants for and against grantees of the original parties was, in effect, the creating of servitudes. [6] Such servitudes are frequently spoken of as "equitable easements." They were unknown to the common law and are not among the servitudes enumerated by our code. (Civ. Code, secs. 801, 802.) They are opposed to the rule that the owner of

land may not create new and heretofore unknown estates, and while their validity—that is, the enforceable character of such covenants as against grantees of the original parties—is now too well established to admit of question, it has resulted that the covenants which will be so enforced are limited to those which directly concern and benefit what we may term the dominant tenement, and, also, that any provisions of an instrument creating or claimed to create such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land. (*Firth* v. *Marovich,* 160 Cal. 257, [Ann. Cas. 1912D, 1190, 116 Pac. 729]; *Berryman* v. *Hotel Savoy Co.,* 160 Cal. 559, [37 L. R. A. (N. S.) 5, 117 Pac. 677]; *Bresee* v. *Dunn,* 178 Cal. 96, [172 Pac. 387].)

Viewing the facts of the present case in the light of what has just been said, and leaving out of consideration for the time being the element of a general and uniform plan of restriction, it is quickly evident that as to those lots which Marshall had parted with prior to his conveyance of the plaintiff's lot, there is no equitable servitude. Marshall was no longer interested in those lots and by no possibility can it be said that the covenants in the deed to the plaintiff's lot were exacted by him for the benefit of lots which he did not own.

In like fashion it is plain that there is no servitude over the plaintiff's lot in favor of those lots which Marshall still retained when he gave the quitclaim deed of 1905 and with which he parted subsequently. If a servitude had previously existed in favor of those lots, he, as their owner, had the right to surrender it and undoubtedly did so by his quitclaim deed.

The remaining question is as to the existence of a servitude in favor of those lots which Marshall still owned when he sold the plaintiff's lot and with which he parted before he gave his quitclaim deed. This is purely a question of the construction and consequent effect of the deed by Marshall parting with the plaintiff's lot. [7] The situation in this  respect is that one, the owner of a tract of land, sells a portion of it, exacting of the grantee restrictive provisions as to its use, but without a word indicating that the land conveyed is part of a larger tract, the balance of which the grantor still retains, or that the restrictions are intended for the benefit of other lands, or that their benefit is to inure to or pass with other lands, and without any description or designation of

what is an essential element of any such servitude as is claimed, namely, the land which is to be the dominant tenement. Servitudes running with the land in favor of one parcel and against another cannot be created in any such uncertain and indefinite fashion. It is true, the nature of the restrictions is such that, when considered in connection with the fact that Marshall still retained the greater portion of the tract, it is not improbable that he exacted them for the benefit of the portion so retained. But the grantee's intent in this respect is necessary, as well as the grantor's, and the deed, which constitutes the final and exclusive memorial of their joint intent, has not a word to that effect, nor anything whatever which can be seized upon and given construction as an expression of such intent. If such was their intent, it has not been expressed. Omitting, as we must, any consideration of what the understanding was between Marshall and his grantees, except as shown by the instruments between them, and construing the deed in the light of the fact that Marshall was at the time the owner of a large number of other lots in the tract, it may yet well be that the grantee intended to obligate himself only to Marshall, his heirs and assigns. Certainly, that is all that is said. It is also difficult to see how there can be any valid creation of what is practically a servitude without some designation or description of what is an essential factor, namely, the dominant tenement. (*McNichol* v. *Townsend*, 73 N. J. Eq. 276, [67 Atl. 938]; *Renals* v. *Cowlishaw*, L. R. 11 Ch. Div. 866; *Wagner* v. *Hanna*, 38 Cal. 111, 116, [99 Am. Dec. 354].) The fact also that the only expression in the deed as to who may act in case of a breach of the restrictions is that in such case the land shall revert to Marshall, his heirs or assigns, is strongly indicative of the fact that it was intended that Marshall, his heirs or assigns, should alone have the right to act. (*Clapp* v. *Wilder*, 176 Mass. 332, [50 L. R. A. 120, 57 N. E. 692].) It is not possible, in view of these considerations and the rule of strict construction very properly applicable, reasonably to construe the restrictions as covenants which run, not to Marshall, his heirs or assigns, but to Marshall as the owner of certain land not designated or described and to his various successors in interest in such land. This view is amply supported by authority. (*Los Angeles etc. Co.* v. *Muir*, 136 Cal. 36, [68 Pac. 308]; *Berryman* v. *Hotel Savoy Co.*, *supra*;

*Bresee* v. *Dunn, supra; Sailer* v. *Podolski,* 82 N. J. Eq. 459,
[88 Atl. 967] ; *Hemsley* v. *Marlborough Hotel Co.,* 62 N. J. Eq.
164, [50 Atl. 14]; *Badger* v. *Boardman,* 16 Gray (Mass.),
559; *Skinner* v. *Shepard,* 130 Mass. 181; *Clapp* v. *Wilder,
supra.*)

It is also in line with section 1468 of the Civil Code, which
reads: "A covenant made by the owner of land with the
owner of other land to do or refrain from doing some act on
his own land, which doing or refraining is expressed to be
for the benefit of the land of the covenantee, and which is
made by the covenantor expressly for his assigns or to the
assigns of the covenantee, runs with both of such parcels of
land."

The restrictive provisions under consideration here are
not, as required by this section, "expressed to be for the
benefit of the land of the covenantee." The section was not
adopted until 1905, after the deed in question was given, and
is, therefore, not controlling, but it is an expression of what
the necessary requirements should be in order that covenants
of this character may run with the land.

So far the case has been considered without reference to
the fact that Marshall in all his deeds exacted similar restric-
tions and clearly had in mind a uniform plan of restrictions
which he intended to impose, and actually did impose, upon
all the lots in the tract as he sold them. Does the addition of
this element make any difference?

[8] It is undoubted that when the owner of a subdivided
tract conveys the various parcels in the tract by deeds contain-
ing appropriate language imposing restrictions on each parcel
as part of a general plan of restrictions common to all the par-
cels and designed for their mutual benefit, mutual equitable
servitudes are thereby created in favor of each parcel as against
all the others. The agreement between the grantor and each
grantee in such a case as expressed in the instruments be-
tween them is both that the parcel conveyed shall be subject
to restrictions in accordance with the plan for the benefit of
all the other parcels and also that all other parcels shall be
subject to such restrictions for its benefit. [9] In such a
case the mutual servitudes spring into existence as between
the first parcel conveyed and the balance of the parcels
at the time of the first conveyance. As each conveyance fol-
lows, the burden and the benefit of the mutual restrictions im-

posed by preceding conveyances as between the particular
parcel conveyed and those previously conveyed pass as an
incident of the ownership of the parcel, and similar restric-
tions are created by the conveyance as between the lot con-
veyed and the lots still retained by the original owner. Of
this character is *Alderson* v. *Cutting,* 163 Cal. 504, [Ann.
Cas. 1914A, 1, 126 Pac. 157].

[10] The difference between such a case and the one at
bar is that here there is no language in the instruments be-
tween the parties, that is, the deeds, which refers to a common
plan of restrictions or which expresses or in any way indicates
any agreement between grantor and grantee that the lot con-
veyed is taken subject to any such plan. Is this difference
material? This is the crux of the present case. It has been
held that this difference is not material. There are decisions
to the effect that when it appears that the owner of a sub-
divided tract has sold various lots in it from time to time and
in each conveyance has exacted restrictive covenants which,
it is evident, when all the deeds are considered together, were
exacted in accord with a common plan, it is enough, and that
mutual equitable servitudes have been created, although in
any single deed taken by itself there is nothing to indicate
any intent to create such reciprocal rights. (*Parker* v. *Night-*
*ingale,* 6 Allen (Mass.), 341, [83 Am. Dec. 632]; *Hopkins*
v. *Smith,* 162 Mass. 444, [38 N. E. 1122]; *Bacon* v. *Sandberg,*
179 Mass. 396, [60 N. E. 936]; *Sayles* v. *Hall,* 210 Mass. 281,
[Ann. Cas. 1912D, 475; 41 L. R. A. (N. S.) 625, 96 N. E.
712].)

There is likewise authority to the contrary. (*Mulligan*
v. *Jordan,* 50 N. J. Eq. 363, [24 Atl. 543]; *Roberts* v. *Scull,*
58 N. J. Eq. 396, [43 Atl. 583]; *Sharp* v. *Ropes,* 110 Mass.
381; *Judd* v. *Robinson,* 41 Colo. 222, [124 Am. St. Rep. 128,
14 Ann. Cas. 1018, 92 Pac. 724].)

An analysis of such a case, however, leaves, we believe, no
reasonable doubt as to which line of authorities is correct.
The intent of the common grantor—the original owner—is
clear enough. He had a general plan of restrictions in mind.
But it is not his intent that governs. It is the joint intent
of himself and his grantees, and as between him and each
of his grantees the instrument or instruments between them,
in this case the deed, constitute the final and exclusive me-
morial of such intent. It is also apparent that each deed

must be construed as of the time it is given. It cannot be construed as of a later date, and in particular its construction and effect cannot be varied because of deeds which the grantor may subsequently give to other parties. Yet that is exactly what is done in the decisions holding that mutual servitudes exist in cases where all the deeds taken together evidence a common plan of restrictions, although no single deed by itself evidences anything more than an intent to put particular restrictions on a particular lot. As a concrete instance, take the first deed given by Marshall. At that time there was nothing to evidence any general plan of restrictions, and if the question as to the effect of the deed had arisen, then it must necessarily have been construed as if no such general plan existed. If it must have been so construed at that time it must be so construed now. Whatever rights were created by the deed were created and vested then, and the fact that it later appears that Marshall was pursuing a general plan common to all the lots in the tract cannot vary those rights. The same is true of each deed as it was given. Nor does it make any difference that, as claimed by the defendants, Marshall gave each grantee to understand, and each grantee did understand, that the restrictions were exacted as part of a general scheme. Such understanding was not incorporated in the deeds, and as we have said, the deeds in this case constitute the final and exclusive memorials of the understandings between the parties. Any understanding not incorporated in them is wholly immaterial in the absence of a reformation. (*Long* v. *Cramer etc. Co.,* 155 Cal. 402, 406, [101 Pac. 297]; *Sailer* v. *Podolski, supra; Sprague* v. *Kimball,* 213 Mass. 380, [Ann. Cas. 1914A, 431, 45 L. R. A. (N. S.) 962, 100 N. E. 622].) This whole discussion may in fact be summed up in the simple statement that if the parties desire to create mutual rights in real property of the character of those claimed here they must say so, and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them which constitute the final expression of their understanding.

It follows that the additional element mentioned—that Marshall exacted similar restrictive covenants from all the grantees of lots in the tract—does not affect the matter and cannot change the conclusion reached without it. That conclusion, as before expressed, is that the restrictions in the deed

by Marshall to the plaintiff's predecessor in interest ran personally to Marshall and not to the other lots in the tract, and that the defendants, who claim wholly as lot owners, did not acquire the right to insist upon those restrictions.

[11] The point is made that a suit to quiet title, as this is, is a suit in equity, and that the action of the plaintiff in seeking to escape from the restrictions in question is inequitable and, therefore, relief in equity should be denied him. This is no justification of the present judgment which goes further than denying the plaintiff relief and affirmatively makes his title subject to the restrictions. It would also do the defendants little good to secure now a dismissal of the plaintiff's action in view of what we have said as to the nonexistence of the restrictions as to the defendants. The plaintiff would be at liberty to use his lots without regard to the restrictions and the defendants could not prevent him.

But however this may be, the rule relied upon by the defendants has no application here. It may be very unneighborly and unfriendly for the plaintiff to put his lot to uses which will impair the residential character of the tract, but that is a very different thing from his seeking to clear his title of restrictions which are asserted against it, but which do not in fact exist, and which, so far as the defendants are concerned, never did exist, and that is all the plaintiff is seeking to do in this action.

The lower court found the substantial facts in the case. Upon those facts as found judgment should have been given for the plaintiff. The judgment is, therefore, reversed, with directions to the lower court to enter judgment for the plaintiff quieting his title as against the defendants.

Shaw, J., and Lawlor, J., concurred.