**PIERSON et al. v. CANFIELD et al.**
(No. 9358.)

(Court of Civil Appeals of Texas. Dallas. April 4, 1925. Rehearing Denied May 9, 1925.)

1. **Covenants** ⬯79(3)—Erection of building, which constitutes breach of condition subsequent in conveyance by defendants' predecessor in title, cannot be enjoined by other grantees.

Landowners in same community, deriving title from defendants' predecessor, cannot enjoin erection of building by defendant on his own premises on ground that it constitutes breach of restrictive provision in deed by such predecessor, providing for reversion for breach, it being a condition subsequent.

2. **Covenants** ⬯84—Restrictive covenants running with land may be enforced by original grantor or subsequent purchasers of land benefited against original and remote grantees.

Restrictive covenants running with land may be enforced in proper case by original grantor and subsequent purchasers of land to be benefited by restrictions against original

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

grantee and those who take title burdened with restrictions.

**3. Covenants ⊚⟩79(3)—Restrictive covenants in deed, executed subsequent to deeds conveying other land, held not for benefit of such land.**

Restrictive covenants in deed, executed by common grantor, were not executed for benefit of land, previously conveyed by grantor, and do not constitute servitudes on property last conveyed for benefit of property transferred by prior conveyance.

**4. Covenants ⊚⟩79(3)—Fact that deeds contained same restriction held not to establish existence of general scheme or show that restrictions were intended for benefit of other land.**

Fact, that deeds by common grantor contained identical restrictions, is not sufficient to establish existence of general scheme for restriction of addition, or show that restrictions in one deed were intended for benefit for any other lot or lots conveyed by common grantor.

**5. Frauds, statute of ⊚⟩56(1)—Right to enforce restrictive covenant constitutes "estate in land" which must be created according to statute.**

Right of claimant to enforce restrictive covenants as to cost and location of buildings on lot, acquired from common grantor, is servitude running with land, and constitutes estate in lands, and must be established by evidence meeting requirements of Rev. St. art. 1103.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estate.]

**6. Covenants ⊚⟩103(2)—Erection of servant's house, on rear of lot, for temporary residence, held not to violate restrictions.**

Where deed permitted erection of servants' houses, stables, etc., on rear of lot, if owner in good faith erected servants' house, on rear of lot, to be used as his residence temporarily, with bona fide intention of erecting, within a reasonable time, a main residence thereon in compliance with restrictions of deed, restrictive covenants *held* not violated.

Appeal from District Court, Dallas County; Towne Young, Judge.

Suit by S. L. Canfield and others against Eugenia Pierson and others. From a decree for plaintiffs, defendants appeal. Reversed and remanded.

Church, Read & Bane, of Dallas, for appellants.

E. M. Herndon, of Dallas, for appellees.

LOONEY, J. From a decree in favor of appellees enforcing a restrictive covenant in a deed, appellant prosecutes this appeal.

Appellees alleged that they and appellant owned residence lots in Trinity Heights addition No. 1 to the city of Dallas, claiming title by mesne conveyances from the Trinity Heights syndicate as common grantor; that the syndicate platted the addition into resi- dence lots, and, in order to render them attractive to purchasers, inserted in all deeds conveying lots, certain restrictive clauses, among others, one providing that no house should be built on Woodin boulevard to cost less than $1,500; that these restrictions were covenants running with the land, and were entered for the benefit of appellees and all others who purchased lots in the addition; that appellees, after purchasing, built residences on their lots conforming to the restrictions contained in the deeds, and did so under the belief that all others would, in good faith, comply with the same. They alleged that appellant violated the covenant above mentioned by building a house on the lot owned by him on Woodin boulevard that cost less than $1,500, to wit, a sum not exceeding $800; wherefore, they prayed for mandatory injunction against appellant requiring him, within a period of 90 days, to move the house from the lot or, in the alternative, to conform the same to the restriction.

These allegations were denied by appellant. The case was tried by the judge without a jury, who, after hearing the evidence, filed findings of fact, and concluded, as a question of law, that appellees were entitled to the equitable relief sought, entered a decree in their favor granting a mandatory injunction against appellant, commanding him, within 90 days from the date of the order, to remove the house erected by him on the lot, or, in the alternative, to conform the same to the restriction.

[1] The facts are as follows: On February 10, 1922, the Trinity Heights syndicate conveyed lots 3 and 4 in block 21, Trinity Heights addition No. 1 to Marguerite Walker Forrest, under whom, by mesne conveyances, appellant claims title to lot No. 3 in said block. This conveyance was made subject to the conditions therein set out, one of which was, that no house should be built on Woodin boulevard in said addition that cost less than $1,500, and providing that no house should be built on the rear end of the lot, or lots, for the purpose of rental or for any other purposes except for servant's houses, stables, etc., for the use of the occupants of the main residence.

The following provision for defeasance is also a part of this conveyance, to wit:

"The above conditions, and each of them, shall run with said property, and bind the same in the hands of all subsequent owners, however remote; and, should any of said conditions at any time be violated, the title to said property shall revert to the grantors herein, their heirs or assigns, as the case may be."

The deeds executed by Trinity Heights syndicate conveying lots facing on Woodin boulevard to the several parties under whom appellees claim (except it is not shown that plaintiff S. M. Dooley owns any property in

⊚⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said addition) were all executed prior to the date of the execution of the conveyance under which appellant claims title. The deeds, under which appellees and appellant claim, contain identical restrictive provisions, but differ in this respect, that is, while the restrictions are denominated covenants running with the land in the deeds under which appellees claim, they are conditions subsequent in the deed under which appellant claims, as is shown by the paragraph from the deed hereinbefore quoted.

Prior to the institution of this suit, appellant had built on the rear end of his lot, 15 feet from an alley, a two-room house with sleeping porch that cost less than $1,500 and was using the same temporarily as a residence. In our opinion it will not be necessary to notice, except incidentally, the assignments of error urged by appellant, because it is apparent that the judgment below was not authorized by any fact or combination of facts shown by the record and must, for this reason, be reversed.

It will be observed that the restrictions contained in the deed, under which appellant claims, are in form and meaning conditions subsequent. The conveyance by its terms provides that, should any condition be violated, the title to the lot of land shall revert to the grantors, their heirs, or assigns. The reversion clause is in favor of the grantors, their heirs, or assigns, and, as appellees belong to neither group, are not entitled to enforce the condition. It is not intended by this holding to intimate that, in a proper case, restrictions such as these may not also be enforced as covenants by purchasers of other lots under a uniform settlement scheme, but the holding is, that there is nothing in the evidence tending to show that the restrictions are other than what they purport to be, that is to say, conditions subsequent, for the violation of which the grantors, their heirs, and assigns, alone, can claim forfeiture. 12 C. J. 410; Werner v. Graham, 181 Cal. 174, 183 P. 947.

[2] It has been held in this state that restrictive covenants running with land may be enforced, not only against the original grantee, but also against those who take title burdened with the restrictions. In a proper case, the law seems to be that the original grantor, as well as subsequent purchasers of land to be benefited by the restrictions from a common grantor, may enforce such restrictive covenants. This remedy is afforded on the idea that the restrictions constitute a burden following the land in the hands of all subsequent purchasers, while, on the other hand, the benefit afforded by the restrictions to other lots is considered a valuable incident to their ownership, in other words, is a burden on the servient in the interest of the dominant estate. As before stated, this suit was brought on the theory

that Trinity Heights syndicate inaugurated a uniform scheme for building and settling Trinity Heights addition No. 1, and, to that end, caused to be placed in deeds to purchasers of lots in the addition, restrictive covenants running with the land.

[3] The syndicate had already parted with title to the lots, now owned by appellees, before the deed, under which appellant claims, was executed and, at that time, owned no interest therein. Therefore, it cannot be said that restrictive covenants, entered in the deed, subsequently executed under which appellant claims, were exacted for the benefits of land not at the time owned by the syndicate, or that the same constitute servitudes or burdens on the property now owned by appellant for the benefit of the lots now owned by appellees. Roberts v. Scull, 58 N. J. Eq. 396, 43 A. 586; Werner v. Graham, 181 Cal. 174, 183 P. 948.

[4] The right of appellees to enforce covenants in the deed, under which appellant claims, to which they are neither parties nor assigns, necessarily depends on a showing that the covenants were entered into for the benefit of their property. There is nothing in the deed, or in the evidence otherwise, indicating that the parties to the deed intended the covenants for the benefit of either prior or subsequent purchasers from the common grantor. On the issue of fact, as to the existence, whether or not of a uniform scheme of construction in settling the addition, the only evidence before the court are the four deeds containing identical restrictions as to the use of the lots. Three were executed by the common grantor to the persons under whom appellees Canfield, Killough, and Martens claim title, the other is the deed executed by the common grantor to the party under whom appellant claims. There is no language in these deeds referring to a common scheme of restrictive settlement or other evidence of any agreement whatever between the grantor and the grantees that the lot, or lots, were conveyed subject to, or as a part of, any such scheme.

The fact that these deeds contained identical restrictions would not, in our opinion, be sufficient of itself to establish the existence of a general scheme, or that the restrictions in the deed under which appellant claims were intended for the benefit of any other lot, or lots, conveyed by the common grantor. It may be true that the coincidence of the execution of deeds, by the common grantor containing identical restrictions as to the use of the lots, shows that the common grantor had in mind a general plan, but the intent of the grantor alone cannot control, it requires the joint intent of grantor and grantee, and, as between them, the instrument, or instruments, exchanged and forming a part of the transaction constitute the final and exclusive evidence of the intent of

the parties and of the covenants entered into.

[5] The right claimed by appellees to enforce against appellant restrictive covenants as to the cost and location of buildings on the lot owned by him, is, if it exists at all, a servitude running with the land in favor of the lots owned by appellees and against the lot owned by appellant. Such servitude or burden, curtailing the liberty of the owner to use and improve his property as he chooses, is an interest of such magnitude as to constitute an estate in lands, and, as such, must be established by evidence that meets the requirements of the statutes; in other words, such a servitude, interest or estate, must be created as other such servitudes, interests and estates in lands are required to be created. Revised Statutes, art. 1103.

The Supreme Court, in Parsons v. Hunt, 98 Tex. 420, 84 S. W. 646, gave to the statute above cited the meaning we have attributed to it. In that case it was claimed that the right to use a river bank, the land of another, as a landing place for a ferryboat was a continuing right, that is, that it was a burden or servitude that ran with the land. The court held that, whether this right be denominated an easement or a license, it could not be conveyed except by writing and, on this point, among other things, said:

"Conceding that the language attributed to Rutherford, giving the permission to use his land as a landing place for Hunt's ferryboat, conferred upon the latter a continuing right to use the land for that purpose so long as the ferry was maintained, it constituted such an estate in the land as would pass with the ferry by descent to the heirs or legatees of Hunt, therefore is embraced in article 624 [new article 1103] above quoted. The parol conveyance of the right claimed was contrary to the statute and therefore void." Adams v. Weir Flagg (Tex. Civ. App.) 99 S. W. 726; Mulligan v. Jordan, 50 N. J. Eq. 363, 24 A. 543; Sailer v. Podolski, 82 N. J. Eq. 459, 88 A. 967; Judd v. Robinson, 41 Colo. 222, 92 P. 724; Long v. Cramer, 155 Cal. 402, 101 P. 297; Werner v. Graham, 181 Cal. 174, 183 P. 945.

It is very evident that this case was not tried on the principles of law that we believe are applicable and decisive of the controversy, therefore, the case will be remanded for retrial in harmony with this opinion. In view of this fact, we will notice appellant's contention that the trial court erred in finding that he violated the restrictive covenant contained in the deed under which he claims, by erecting the two-room house and using it temporarily as a residence.

[6] It will be noted that the deed, under which appellant claims, provides, in effect, that servant's houses, stables, etc., for the use of the occupants of the main residence, may be built on the rear end of the lot. The house in question was located where a serv-

ant's house should have been located under this provision in the deed. Appellant testified without contradiction, that he intended to convert the building into a servant's house and garage, and that he was occupying it temporarily as a residence until he could erect his main residence. On this point he is corroborated to some extent by the witnesses Patterson and Coffey. The deed, under which he claims, prescribed neither time limit nor the order in which houses should be built upon the lot, nor is there found any restriction as to the cost of servant's houses, stables, etc.

In view of the fact that forfeitures are never favored, we are of the opinion that, if appellant, in good faith, erected a servant's house to be used as a residence temporarily, with the bona fide intention, within a reasonable time, of erecting a main residence on the lot in compliance with the restrictions in the deed, it would not constitute a violation of the restrictive covenants.

These, however, are questions of fact to be determined on a retrial of the case.

Reversed and remanded.