## GOODMAN v. BINGLE.
### No. 9645.

Court of Civil Appeals of Texas. Galveston. Feb. 9, 1932.

Sam W. Levy, of Houston, for plaintiff in error.

Stevens & Stevens, of Houston, for defendant in error.

. GRAVES, J.

The litigants own directly opposite properties fronting on "Heights Boulevard," at Sixteenth street in Houston; Mr. Goodman's being the southwest corner of that intersection and Mr. Bingle's the southeast one. Their respective titles came down through mesne conveyances under a common source, the Omaha & South Texas Land Company, a corporation, the deeds from which, in both instances, containing this restriction: "This deed is made and accepted with the express understanding and agreement that no residence building shall be erected or any property fronting on the Boulevard in said Houston Heights costing less than twenty five hundred dollars that no building shall be erected or used for business purposes of any kind or description on any lot or abutting on said Boulevard and that all residence buildings on each lot of lots shall be set back at least forty feet from the front block line on said Boulevard and that no fence of any description shall be erected or maintained within a distance of forty feet of the front block line of said Boulevard lots and that a failure to comply with any one of these conditions shall operate as a forfeiture of this deed and all rights of the grantee his heirs and assigns and legal representatives thereunder and that the title to the land described herein in such event shall immediately be reinvested by force of this deed in the Omaha and South Texas Land Company, in fee simple without necessity for other further proceedings."

On the application of Mr. Bingle, the trial court perpetually enjoined Mr. Goodman from erecting and maintaining on his lots an oil, gas, and service station; on appeal of the latter therefrom, this court reverses that decree, and, in lieu of it, enters judgment that the cause be rendered in his favor, mainly on these considerations:

Neither the plat nor the deed of dedication of the Heights addition, of which the boulevard here involved was the main thoroughfare, originally promulgated and put of record by the land company contained or referred to any restrictions, nor was there other record evidence showing restrictions in deeds to other lots on the boulevard; the land company in January of 1897, years before either of these litigants acquired his

property, conveyed all the lots and improvements it then owned in the addition, "and all the lots, parts of lots, and parcels of land, together with the improvements thereon, that may hereafter revert to or in anywise become the property of the said Omaha & South Texas Land Company," to Carroll M. Carter, who, in turn, on November 18, of 1901, released of record the restrictions so at first retained by the former against this property that in 1919 became Mr. Bingle's, that is, lot 24 and ¼ of lot 23, block 140 of the Heights addition, which, as above stated, lay directly across the boulevard from Mr. Goodman's corner. Mr. Bingle was not only not a party to the restrictive provision in the deed from the land company, conveying the lots on the opposite side that Mr. Goodman now owns to one of his remote predecessors in title, but also, when he came to purchase his own property across the boulevard in 1919, he was charged with record knowledge of the fact that there were then no restrictions on it, and had not been for 18 years. The cause is not ruled by Green v. Gerner (Tex. Civ. App.) 27 S.W.(2d) 828, upon which the defendant in error relies, because:

■ (1) The quoted covenant here did not by its terms purport to run in favor of other grantees of vicinal lots under the Omaha & South Texas Land Company, but plainly evidenced the intention to reserve to the grantor itself merely an individual privilege applicable only to particular lots conveyed by deed expressly incorporating it.

(2) The evidence does not disclose any such general scheme or plan in the laying out, selling of lots in, and maintenance of, the addition as would entitle one subsequent owner of lots therein to enjoin another from violating this restrictive covenant that so appeared in the respective deeds from their remote common grantor down under which they severally claimed.

■ As indicated, the language of this restriction appeared alike only once in the respective chains of title of these parties, that is, in the deeds from the land company conveying their several properties to their remote grantors, there being no restrictions in the immediate deeds to either of them; it imports a condition subsequent, enforceable by the land company alone, as the explicitly recited penalty for the breach thereof itself makes manifest—the forfeiture of the grantee's rights, and "that the title to the land described herein in such event shall immediately be reinvested by force of this deed in the Omaha and South Texas Land Company, in fee simple without necessity for other further proceedings." There are in it, furthermore, neither specific provisions investing other lot owners with the enforcement of what was thus reserved as a distinctly individual right in the original grantor, nor declaring that the burdens imposed in the particular deeds are either part and parcel of a general plan to restrict the entire Heights boulevard, or are intended for the benefit of other vicinal owners therein; it must therefore be construed as was a similar restriction in Pierson v. Canfield (Tex. Civ. App.) 272 S. W. 231, 233, where the court said: "It will be observed that the restrictions contained in the deed, under which appellant [defendant] claims, are in form and meaning conditions subsequent. The conveyance by its terms provides that, should any condition be violated, the title to the lot of land shall revert to the grantors, their heirs, or assigns. The reversion clause is in favor of the grantors, their heirs, or assigns, and, as appellees belong to neither group, are not entitled to enforce the condition."

See, also, Werner v. Graham, 181 Cal. 174, 183 P. 945, Judd v. Robinson, 41 Colo. 222, 92 P. 724, 124 Am. St. Rep. 128, 14 Ann. Cas. 1019.

■ Aside from what thus intrinsically seems to have been the plain purport of the covenant involved, no general scheme or plan for the development and maintenance of the addition whereby one owner might enforce it against another appears, even after recourse is had to the light of surrounding circumstances. The rule on this subject, as declared by a long line of Texas holdings, such as Hooper v. Lottman (Tex. Civ. App.) 171 S. W. 270, 271, and Curlee v. Walker, 112 Tex. 40, 244 S. W. 497, in brief substance is thus quoted from the former: "Whether a person not a party to a restrictive covenant has the right to enforce it, depends upon the intention of the parties in imposing it. This intention is to be ascertained from the language of the deed itself, construed in connection with the circumstances existing at the time it was executed."

The intention referred to is not that of the grantor alone, but of both parties to the deed. Pierson v. Canfield, supra, where it is said: "It requires the joint intent of grantor and grantee, and, as between them, the instrument, or instruments, exchanged and forming a part of the transaction constitute the final and exclusive evidence of the intent of the parties and of the covenants entered into."

■ As previously pointed out, there was here neither other evidence of the intention of the land company grantor in imposing this restriction than the fact that it so mediately appeared back in the respective lines of title of these present litigating lot owners, nor any proof whatever as to that of the grantees under those instruments; both the original plat and dedication of this addition were silent as to any restrictions, and even those found in particular deeds were all identical in terms with this one, that is, preserved an individual privilege to the Omaha & South Texas Land Company; not only so, but, by

the undisputed evidence, that founder of the addition and of the Heights boulevard through it further so construed the meaning and effect of what it had done in establishing and developing the property, by promiscuously conveying lots along that thoroughfare without restrictions so long as its ownership lasted, and then empowering its final grantee, Carroll M. Carter, to continue doing likewise by its above-mentioned deed of all its remaining rights and holdings to him; in this way it resulted that, from about 3 years after the establishment of the addition up to the end of 1927, about 115 out of the total of 467 platted lots abutting on the boulevard were thus conveyed by the land company and its assigns together without restrictions of any sort.

When recourse is thus had to the surrounding circumstances, it conclusively appears that there was no such general scheme or plan here as entitled the various vendees of these lots to enforce the quoted covenant inter sese. Since the action for and the judgment granting that relief were dependent solely upon there being one, it follows that the writ was improvidently issued. Hooper v. Lottman (Tex. Civ. App.) 171 S. W. 270; Curlee v. Walker, 112 Tex. 40, 244 S. W. 497; Hill v. Trigg (Tex. Com. App.) 286 S. W. 182; Davidson v. Dunham, 159 App. Div. 207, 144 N. Y. S. 489; Scull v. Eilenberg, 94 N. J. Eq. 759, 121 A. 788.

Further discussion is deemed unnecessary, as these conclusions determine the merits of the appeal; the trial court's judgment has been reversed, and the cause rendered here in favor of the plaintiff in error.

Reversed and rendered.