INTERSTATE CIRCUIT, INC., et al.,
Appellants,

v.

PINE FOREST COUNTRY CLUB, Appellee.

No. 14910.

Court of Civil Appeals of Texas.

Houston.

Dec. 15, 1966.

Rehearing Denied Jan. 5, 1967.

Johnson, Bromberg, Leeds & Riggs, Dallas, and Presley E. Werlein, Jr., Houston, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, Wm. R. Hoge, Jr., and Dan Mat-

thews, Houston, and L. Keith Simmer, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is a class suit against numerous defendants, including appellants, to remove the cloud on appellee's title to certain real estate created by recitations in its deed restricting the use of said tract to country club or residential use only. Appellee contended that the covenants were not part of a general plan or scheme involving the lands of appellants, but were personal to the grantor in the deed, who had conveyed the right to enforce the covenants to appellee. The trial court set aside the verdict of a jury and rendered a judgment for appellee sustaining this contention.

The Garden Oaks Company purchased 747.229 acres out of the S. W. Allen Survey in Harris County, Texas, and received a deed dated March 3, 1937. Subsequent to said date the Garden Oaks Company platted residential subdivisions designated as Garden Oaks, Sections 1 through 5. Each subdivision was separately platted and the land area included in each plat, described by metes and bounds, was subjected to certain restrictive covenants. Each instrument of dedication and restriction included the following language: "This instrument of dedication relates to and affects the above described property and shall not affect other property not herein described." No over-all plat of the entire tract was prepared or filed for record. The plats adopted by the Company for the individual residential subdivisions showed adjacent land, not then platted, as "acreage" or "unrestricted".

Thereafter portions of the original 747.-229 acre tract, including a 24 acre tract, were conveyed wtihout restrictions as to use, leaving the Garden Oaks Company a tract of approximately 165 acres and a few scattered lots in the residential subdivisions. By deed dated December 7, 1945, the Company conveyed to appellee 140.023 acres out of the 165 acre tract. The deed of conveyance contained the following provisions:

"This deed is executed and accepted with the understanding that the property above described is hereby and shall remain restricted for the time hereinafter provided so that same may only be used for purposes as follows:

(a) As a country club and golf course on which may be constructed club houses, a golf course, Swimming pool, tennis courts, play grounds and other improvements suitable for and designed for use of said property as a country club; (b) Said property may also be subdivided and platted as a residential subdivision similar to the platting of Garden Oaks Sec. 2 out of the S. W. Allen survey in which event streets shall be dedicated and the property shall thereafter be used in accordance with and conveyed subject to residential restrictions which shall conform with restrictions then in force against Garden Oaks sec. 2 and with similar easements. (c) The foregoing restrictions shall be deemed covenants running with the land and shall continue in force for the duration of the restrictions applicable to Garden Oaks Sec. 2 as originally restricted and as same may from time to time hereafter be extended. Provided nevertheless grantee shall have the right to exchange any portion of said property fronting on Yale Street and extending back from said street not to exceed five hundred (500) feet free from the above restrictions, for other property adjacent to the property hereby conveyed.

Provided such other property is subject to and charged with the foregoing restrictions, and provided grantor shall not be required to release said property until grantee has acquired good title to property taken in exchange and has executed a deed of trust thereon to further secure the above mentioned note. To have and to hold the above described property and premises together with all rights and appurtenances thereto in anywise be-

longing subject to the restrictions aforesaid unto the said Pine Forest Country Club its successors and assigns forever. And Garden Oaks Co. hereby binds itself, its successors and assigns to warrant and forever defend all and singular the said property and premises subject to restrictions, easements, and covenants hereinabove set out, unto the said Pine Forest Country Club, its successors and assigns against the lawful claims and demands of any and all persons whomsoever lawfully claiming or to claim the same or any part thereof."

After such conveyance Garden Oaks Company retained approximately 25 acres lying immediately to the west of said property and running the full length of the property, the east line of said tract being described in appellee's deed as its west line.

Subsequent to the conveyance to Pine Forest Country Club, Garden Oaks Company, or its successors, conveyed portions of the 25 acre tract to St. Matthews Methodist Church, Corrigan-Houston, Inc., Interstate Circuit, Inc., and made a long-term lease of the remaining 13 acres to Sears, Roebuck and Company.

The residential restrictions placed on Garden Oaks, Section 2, are still in full force and effect. This Section lies across North Shepherd Drive from the 25 acre tract, and is near, but not contiguous with, the Pine Forest Country Club tract. The Garden Oaks Company had sold most, but not all, of the lots in Section 2 at the time of the sale to the Pine Forest Country Club.

In answer to the issues submitted, the jury (1) failed to find changed conditions in the area of the country club, but (2) found that there was a general plan or scheme for the development of the country club property and the adjacent property to the west along North Shepherd Drive, and (3) that Garden Oaks Company placed restrictions on the use of the Pine Forest Country Club property for the purpose of increasing the value of the commercial property owned by it to the west of the country club tract along North Shepherd Drive and that Corrigan-Houston and Interstate Circuit, Inc. purchased their property from the successors of Garden Oaks Company relying on the restricted use of the Pine Forest Country Club property.

The problem in this case is that of determining whether anyone other than Garden Oaks Company and its successors has a right to enforce the restrictions on use contained in the deed from the Garden Oaks Company to the Pine Forest Country Club. If the Garden Oaks Company established a general plan for the development of the 165 acres which had not been platted at the time of the sale to the Pine Forest Country Club, and the sale to the club was made with reference to the plan, or if the club had knowledge or notice of the general plan at the time of its purchase, the restrictions as to use can be enforced by subsequent purchasers of other tracts of land included within the general plan. Curlee v. Walker, 112 Tex. 40, 244 S.W. 497 (1922).

The jury found that there was a general plan for the development of this tract of land. There is no finding that the Pine Forest Country Club knew of the plan or were charged with notice of such a plan. No plat of the area was ever prepared. The property conveyed to the club was described by metes and bounds. The deed made no mention of the 25 acres adjacent to the land conveyed, the ownership of which remained in grantor. The fact that restrictions as to use were imposed on the land conveyed, in the absence of similar restrictions on the land retained, would not be evidence of a general plan. There is no mutual benefit between the vendor and the vendee. Hooper v. Lottman, 171 S.W. 270 (Tex.Civ.App.—El Paso 1914); Green v. Gerner, 289 S.W. 999 (Tex.Com.App.1927); Pierson v. Canfield, 272 S.W. 231 (Tex.Civ.App.—Dallas 1925).

Had there been any evidence to warrant the submission of the issue on gen-

eral plan to the jury, the trial court could not have disregarded the answer made by the jury merely because there was not sufficient evidence to support it. Wilderspin v. Bewley Mills, Inc., 298 S.W.2d 636 (Tex.Civ.App.—Ft. Worth 1957, writ ref., n. r. e.).

■ We find no evidence to support the finding of the jury on this issue. The trial court did not err in disregarding the finding that there was a general plan for the development of the area included in the Pine Forest Country Club tract and the 25 acre tract retained by the Garden Oaks Company.

Appellant contends that Garden Oaks placed the restrictions on the country club property for the benefit of the adjacent property owned by it, and that as subsequent grantees of portions of this property they are entitled to enforce such restrictions.

The pertinent general rule is stated in McNichol v. Townsend, 73 N.J.Eq. 276, 67 A. 938 (1907), as follows:

"One owning a tract of land may convey a portion of it, and by appropriate covenant or agreement may lawfully restrict the use of the part conveyed for the benefit of the unsold portion, providing that the nature of the restricted use is not contrary to principles of public policy. In such case, a subsequent purchaser of all or a part of the remaining land for the benefit of which the stipulation was made may in equity enforce the observance of the stipulation against the prior grantee upon the principle that the rights created by such a stipulation are transferable as part of the land to which they are attached (Coudert v. Sayre, 46 N.J.Eq. 386, 393, 19 Atl. 190), and such subsequent purchaser may in equity enforce the stipulation against a person who holds title under the prior purchaser, who has acquired title with notice of the restriction, upon the principle which prevents a party having knowledge of the

just rights of another from defeating such rights (Brewer v. Marshall, 19 N.J. Eq. 537, 542, 97 Am.Dec. 679). As no privity exists between the subsequent purchaser from the common grantor and the original grantee or the persons holding under him, the right of action is necessarily dependent upon the existence of the fact that the stipulation was originally made for the benefit of the remaining land of the common grantor. * * *."

In Ridley v. Haiman, 164 Tenn. 239, 47 S.W.2d 750 (1932), the court said:

"Whether a person not a party to a deed containing a restrictive covenant is entitled to enforce that covenant depends upon the intention of those who were parties thereto. A grantor has a right to impose such legal restrictions as he desires upon the property he aliens. The grantee, of course, must be apprized of the grantor's intention. The intention of the parties is to be gathered, not alone from the written contract, but, when that instrument is indefinite, such intention is to be gathered from the circumstances of the case. * * *"

On the other hand, the courts of California hold that the intention of the grantor and the grantee must be ascertained from the language of the deed and that such intention cannot be established by parol evidence. Werner v. Graham, 181 Cal. 174, 183 P. 945 (1919); McBride v. Freeman, 191 Cal. 152, 215 P. 678 (1923).

The rule stated in Lowell Institution for Savings v. City of Lowell, 153 Mass. 530, 27 N.E. 518 (1891), offers a guide line:

"* * * an easement or servitude of this description ought not to be held to be imposed for the benefit of an adjacent lot of land, in the absence of any words in the grant itself implying it, unless the circumstances and situation at the time of the grant were such as to make it manifest that the condition or restriction or reservation was intended to be for the

benefit of such adjacent lot, and to be annexed to it as an appurtenance. * * *"

In this case the court considered significant the fact that the deed containing the restrictive covenant did not provide that the covenant was imposed for the benefit of the adjacent land, and that the subsequent conveyance of the retained land did not recite the existence of the covenant for the benefit of the land conveyed.

An example of a covenant imposed for the benefit of land retained was cited in Hays v. St. Paul M. E. Church, 196 Ill. 633, 63 N.E. 1040 (1902), wherein the general rule was stated to be that where an owner sells a part of his premises and imposes a restriction on his purchaser by which the lands retained will be benefited, such a transaction is sufficient to show an intention that the restriction is for the benefit of the lands retained, and the grantor, or his subsequent grantee, can enforce it. In a case cited the deed provided that the premises sold were not to be used for saloon or dramshop purposes so long as the grantor owned a saloon building near by.

In McNichol v. Townsend, supra, the court stated that the adjudicated cases do not appear to recognize a presumption that covenants restricting the use of lands conveyed were entered into for the benefit of retained lands. The suggestion appears that there should be something in the deed defining the property which the covenant was intended to benefit.

The rule in Texas was first clearly enunciated in the leading case of Hooper v. Lottman, 171 S.W. 270 (Tex.Civ.App.—El Paso 1914). There it was stated:

"Whether a person not a party to a restrictive covenant has the right to enforce it depends upon the intention of the parties in imposing it. This intention is to be ascertained from the language of the deed itself, construed in connection with the circumstances existing at the time it was executed. * * *"

Hooper v. Lottman is generally cited as authoritative by the courts of Texas. Curlee v. Walker, 112 Tex. 40, 244 S.W. 497 (1922); Goodman v. Bingle, 48 S.W.2d 432 (Tex.Civ.App.—Galveston 1932); Bein v. McPhaul, 357 S.W.2d 420 (Tex.Civ.App.—Amarillo 1962); Fleming v. Adams, 392 S.W.2d 491 (Tex.Civ.App.—Houston 1965).

In Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318 (1935), it was said:

"In every case where parties seek to enforce a restrictive covenant the burden of proof is upon them to establish that the covenant was imposed on defendant's land for the benefit of land owned by them. It is also well settled that in the absence of proof that a restriction was imposed for the benefit of other land, it is construed as a personal covenant merely with the grantor. In many instances it is held that unless it is expressly shown in the conveyance itself that the restriction is imposed for the benefit of other land, or unless there is an obvious purpose to sell in accordance with the general plan, the covenant must be construed as merely a personal one. In any and all events in a case like the present one, *where there is nothing to show that the grantor owned other lands* and *nothing whatever to disclose his purpose, or the mutual intention of the party,* the covenant (if it is a covenant at all) must be construed to be purely a personal one with the grantor." (Emphasis added.)

This language was quoted with approval in Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465 (1941, opinion adopted), where the court also said:

"As there was no general plan or scheme, and as Thomas H. Henderson at the time of his deed owned no property in Westfield A except Lot No. 23, it necessarily follows that at the most the restriction in the deed in question created

only a *personal* covenant in favor of Thomas H. Henderson *as appurtenant to the balance of said Lot No. 23.* Such is the uniform holding. Davis v. Skipper, supra; Toothaker v. Pleasant, 315 Mo. 1239, 288 S.W. 38; Coughlin v. Barker, 46 Mo.App. 54; Werner v. Graham, 181 Cal. 174, 183 P. 945; St. Patrick's, etc., Ass'n v. Hale, 227 Mass. 175, 116 N.E. 407; McNichol v. Townsend, 73 N.J.Eq. 276, 67 A. 938, 939; Berryman v. Hotel Savoy Co., 160 Cal. 559, 117 P. 677, 37 L.R.A.,N.S., 5; Annotation, 21 A.L.R., pages 1281, et seq." (Emphasis added)

The court also stated:

"There is good authority for the proposition that a grantor having a right to enforce a covenant which is personal to himself as to a tract of land owned by him cannot confer such right on a third person except by express assignment. * * *"

In Green v. Gerner, 289 S.W. 999 (Tex. Com.App.1927), the court said:

"Judged by their own terms, each of the deeds in question is intimate to the grantor and grantee therein named, and the restrictive language evidences an agreement between those parties in respect to future use of the particular lot therein described. There is in the deeds no evidence of covenants, conditions subsequent, or agreements *with mutuality as between the various grantees, or as between any grantee and the vendor as representative of any other grantee.* The liberty which belonged to the parties enabled them to contract as they saw fit in relation to a lot then being conveyed, and for aught that appears *in the language of the deed* the grantor retained the liberty to forego and waive the restrictive covenant or condition stipulated by him. * * *" (Emphasis added.)

The case of Pierson v. Canfield, 272 S.W. 231 (Tex.Civ.App.—Dallas 1925, no writ hist.), said:

"* * * It may be true that the coincidence of the execution of deeds, by the common grantor containing identical restrictions as to the use of the lots, shows that the common grantor had in mind a general plan, but the intent of the grantor alone cannot control, it requires the joint intent of grantor and grantee, and, as between them, the instrument, or instruments, exchanged and forming a part of the transaction constitute the final and exclusive evidence of the intent of the parties and of the covenants entered into."

Citing Parsons v. Hunt, 98 Tex. 420, 84 S.W. 644, the court further held that the right to enforce the restrictive covenants in question, if it existed, constituted a servitude running with the land in favor of the lots owned by appellees and against the lot owned by appellant. The court held that such a servitude was an estate in land and could be created only by an instrument in writing and that the right to enjoy the benefits of such a servitude could be conveyed only by an instrument in writing. See Fleming v. Adams, 392 S.W.2d 491 (Tex.Civ.App.—Houston 1965, ref. n. r. e.).

There is nothing in the deed from Garden Oaks to Pine Forest Country Club which indicates an intention that the restrictions as to use were imposed for the benefit of the 25 acre tract which was free of restrictions. The only reference to other land is to Garden Oaks, Section 2. There is no express provision that the restrictions were imposed for the benefit of the owners of lots in this subdivision. With the exception of two unrestricted lots, all of the lots in this subdivision had been sold. Many of the lots were sold on contracts for deeds to be delivered on full payment of the purchase price. Garden Oaks may have had in mind the preservation of the value of its security. While this section was near the country club property, it was not adjacent thereto.

A portion of the retained tract had been leased for business uses prior to the sale

to the country club. It may well have been the intention of Garden Oaks, at the time of the sale to the country club, to develop this tract for business purposes. There was no plat of which the country club had notice evidencing such an intent. The country club was given the right to exchange a portion of the property purchased fronting Yale Street, free of restrictions, for other adjacent property, provided the restrictions were made applicable to the property received in exchange. While a business located on the Yale Street property would be some distance from the retained tract on Shepherd Drive, the fact that the use of a portion of the property for commercial purposes was permitted would suggest that the principal purpose of the restrictive covenant was to preserve the residential character of the area in the vicinity of the subdivisions developed by Garden Oaks, and in which it yet had a financial interest.

The covenants entered into with Garden Oaks by Pine Forest Country Club were either to use the property as a country club or to plat the property as a residential subdivision, in which event certain covenants restricting the use of the various lots were to be established and the lots were to be conveyed subject to such restrictions. These covenants could be enforced by Garden Oaks against Pine Forest Country Club, its successors or assigns. Nothing in the language used purports to authorize anyone other than Garden Oaks to require compliance with the covenants. There is nothing in the instruments by which Garden Oaks, or its successors, conveyed the property in Garden Oaks, Section 2, and the 25 acre tract to appellants indicating an intention to convey, or in fact conveying, to appellants the right to require Pine Forest Country Club to comply with the covenants in question. There is no language in any of these instruments which, when construed in light of the circumstances existing at the time of their execution, would operate to convey to appellants such a right.

There is nothing in the deed from Garden Oaks to Pine Forest Country Club, or in the circumstances under which the transaction was entered into, showing an intention on the part of Pine Forest that the obligation undertaken by it was for the benefit of the 25 acre tract, or that subsequent purchasers of portions of that tract would be authorized to enforce the covenants.

■ The trial court properly disregarded the findings of fact made by the jury since they are not sufficient to authorize a judgment for appellants. Assuming an intention on the part of Garden Oaks to restrict the property conveyed to Pine Forest County Club for the purpose of increasing the value of the 25 acre tract, and a purchase of portions of this tract by appellants relying on the continuance of the restricted use, in the absence of proof of an intention on the part of Pine Forest to subject its property to these restrictions for the benefit of this tract of land, appellants can acquire no rights as respects Pine Forest Country Club.

Since Garden Oaks and its successors made no conveyance in writing of its rights under the covenants to any of appellants and has now conveyed these rights to Pine Forest Country Club, the restrictions on the use of the property can no longer be enforced by anyone. Baker v. Henderson, supra; Pierson v. Canfield, supra.

The judgment of the trial court is affirmed.

WERLEIN, J., not participating.