**Donald McDade KEITH et ux., Appellants,**

v.

**John D. SEYMOUR et al., Appellees.**

No. 13502.

Court of Civil Appeals of Texas.

Houston.

May 19, 1960.

Rehearing Denied June 16, 1960.

Hofheinz, Sears, James & Burns, Robert L. Burns, Houston, for appellant.

Sonfield & Sonfield, and Robert L. Sonfield, Houston, for appellees.

WERLEIN, Justice.

This suit was brought by appellees, John D. Seymour, and others, individually and as a class action for the use and benefit of property owners in Live Oaks Addition, against appellants, Donald McDade Keith and wife, to enjoin them from using or leasing property owned by them described

as Lot 45 and a Part of Lot 44 in said Addition, for business, trade or professional purposes or for any purpose in violation of the restrictions allegedly applicable to lots in said Addition.

Appellants in defense of such action pleaded that such restrictions had not been imposed upon their property, that no general plan or scheme of restrictive covenants had been adopted or effectuated, that the alleged resolution setting out the restrictions was insufficient to give purchasers either actual or constructive notice, failed to satisfy the Statute of Frauds, Article 3995, Vernon's Ann. Texas Civ. St., as to the description of the land, and expressly reserved the right in the grantor to impose or refrain from imposing the restrictions on any lot, thus manifesting a lack of intent to adopt a general plan or scheme of restrictions.

The case was tried without a jury. From the judgment of the court granting a permanent injunction and denying appellants' cross-action for a declaratory judgment declaring that appellants' property was not subject to the restrictions in question, appellants have perfected their appeal.

The parties have stipulated at length as to conveyances of lots in the Addition with respect to whether they were conveyed with or without reference to restrictions. Among other things, it is stipulated that on April 1, 1929, the president and secretary of Live Oaks, Inc., the owner of Lot 10 of Large Lot 48 of the Obedience Smith Survey in Harris County, Texas, with the exception of two 1-acre tracts, specifically described, filed a plat of "Liveoaks" in the map records of Harris County, Texas, and on May 17, 1929 filed an Amended Plat in such map records, Vol. 10, p. 8, and that the Subdivision known as "Liveoaks" comprises a part of the land above described. On December 17, 1929, by reference to said plat in Vol. 10, p. 8, Live Oaks, Inc. conveyed Lot 17 in said Addition, imposing restrictive covenants applicable to such lot.

Thereafter, on December 30, 1929, and prior to conveying any other lot in Liveoaks, a resolution of Live Oaks, Inc., owner of such property, was filed in the deed records of Harris County (Vol. 823, p. 584), setting out the restrictions involved herein. On January 1, 1930, Live Oaks, Inc. conveyed Lot 5 of the Subdivision by deed subject to the restrictions "set out in the instrument [resolution] recorded in Vol. 823, p. 584, Harris County Deed Records". Lot 25 is the only other lot in the Subdivision which Live Oaks, Inc. conveyed by deed making specific reference to the restrictions recorded in Vol. 823, p. 584 of the deed records. On January 29, 1930, after conveyance of Lot 5 and after the resolution containing the restrictions had been filed, a plat referred to as Second Amended Map of Liveoaks was filed in the map records of Harris County, Texas (Vol. 10, p. 48), containing Lots 1 through 45 and Lots A through F.

Live Oaks, Inc. conveyed a total of 16 parcels of land before it was placed in receivership. In the deeds subsequent to the conveyance of Lot 5, with the exception of Lot 25, it conveyed the property by deeds containing a provision reading substantially, "subject to those building restrictions which are of record", without specific reference to the volume or page of the records or county where recorded. On January 16, 1934, Otto W. Reichert, as receiver of Live Oaks, Inc., conveyed to I. G. Strauss said Lot 10 of Large Lot No. 48 in Obedience Smith Survey in Harris County, Texas, except two specifically described 1-acre tracts and two tracts 50 by 100 feet in size, without mention of "Liveoaks". The deed does not convey any land or lots by reference to the plat of Liveoaks, does not except lots previously sold, and does not convey the land subject to any restrictions.

The following map, based on defendants' Exhibit 2, though not precisely to scale, shows the general location and size of the lots in the addition and certain data with respect to restrictions:

### Legend

⊗  Lots expressly exempted from restrictions by resolution.

𝓤  Lots conveyed by receiver to Strauss without restrictions and unless otherwise indicated conveyed by Strauss without restrictions.

☰  Lots conveyed by Strauss or Live Oaks, Inc. with one of the following clauses:
(1) "Subject, nevertheless, to those certain building restrictions which are of record."
(2) "Subject, nevertheless, to all of those building restrictions and easements for the use of public utilities which fully appear of record."
(3) "Subject, nevertheless, to those building restrictions which are of record."
(4) "Subject to those building restrictions which are of record."

⊞  Express reference to Vol. 823, p. 584 of Deed Records.

DEED  Restrictions copied into deed (not copy of resolution).

ooo  "This deed is subject to restrictions in said Addition."

XXX  "This conveyance is made by the Grantors herein and accepted by the Grantees herein subject to all restrictions as to use and improvement of the property which are now in force on said premises."

Excluding the lots previously conveyed by Live Oaks, Inc., the deed to Strauss conveyed 29 lots and fractional parts of 5 other lots, constituting more than one-half of all the lots in the Addition, without mention of building restrictions, such lots being: 1, 2, 3, 6, 19, 20, 21, 22, 23, 24, 27, 28, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 43, 44, 45 and C, D, E, and F. The fractional parts of lots conveyed without restrictions are: The West 17½ feet of Lot 7 the East 15 feet of Lot 9, the West 40 feet of Lot 10, the West 20 feet of Lot 29, and the South part of Lot 42. Strauss conveyed all of the above mentioned enumerated lots without any reference to building restrictions, with the exception of (1) the East 37½ feet of Lot 6, the West 17½ feet of Lot 7, (2) Lots 32 and C, (3) the East 38 feet of Lot 28 and the West 22 feet of Lot 29, and (4) Lot 38 and the adjoining West 10 feet of Lot 37.

Strauss conveyed Lots 19 through 24 to the City of Houston for a public park, which is located, as shown on the map, and which is not used for residences. It will be noted that the interior lots in the Addition front on the park or "island", as it is also called, and that 16 lots, including the property owned by appellants, front on Shepherd Drive, a much traveled thoroughfare.

On May 6, 1936, Strauss conveyed the property in question, Lot 45 and a part of 44, to one Parker S. Presley. The deed did not adopt any restrictions but the general warranty clause concluded as follows:

"  *   *   *   except as against the reservations, restrictions, covenants and conditions, of record applicable to this property as a part of Live Oaks Addition."

Presley conveyed the property to Joe Glenney, Jr., by deed which makes no mention or reference to any restrictions whatever. Glenney conveyed the tract to appellants by deed containing the following provision:

"This conveyance is made and accepted subject to any and all restrictions and easements affecting the use of the premises conveyed herein, now of record in the County Clerk's Office in said County, but only to the extent they are still in effect."

Appellants assert by their two Points, briefed together, that the court erred in holding that the restrictions and covenants contained in the resolution of Live Oaks, Inc., were imposed upon their property and are applicable thereto, and also erred in holding that a general plan or scheme of restrictions was ever adopted or enforced in the Subdivision "Liveoaks".

The ex parte resolution containing the restrictions was passed at a meeting of the board of directors of Live Oaks, Inc., December 26, 1929. It purports to set out various provisions restricting the use to be made of lots in Live Oaks [2 words], but it describes no property whatever. Among other things, it provides that the owners of lots in Live Oaks, it, any or all of them shall have the right to demand and require observance of and compliance with each and all of the provisions, or any of them contained in such resolution; "and provided further that the company may at any time before it sells a lot, or lots, relieve said lot, or lots, from any and all of the provisions, but not thereafter, said provisions being as follows: *  *  *" Here follow provisions prohibiting the use of the property for business purposes and providing that the property shall be used for residence purposes only, except as described in Paragraph "L". Paragraph "L" provides that none of the above and foregoing restrictions shall apply to Lots Nos. 33, 34, 35, D and E, inclusive. The resolution then provides in substance that the grantee to any of the above described property in Live Oaks, shall accept the conveyance out of the company subject to all the restrictions, covenants and conditions set forth, which shall be deemed covenants running with the land, and for themselves, their heirs and assigns, shall forever faithfully observe and perform said restrictions and

conditions, and further provides that if any grantee or any person claiming under him shall violate the same it shall be lawful for any person owning land "which is subject to the same restrictions and conditions in respect to which default is made, or for the company, to institute and prosecute proceedings at law or in equity, for the wrong done or attempted."

■ We are of the opinion that the proviso, "and provided further that the company may at any time before it sells a lot, or lots, relieve said lot, or lots, from any and all of the provisions, but not thereafter," means exactly what it says. It is appellees' contention that such provision gives the company the right, before it sells the first lot or lots in said Addition, to relieve such first lot or lots from the restrictions, but that such right does not extend beyond the sale of the first lot or lots in such Addition. If that had been the intention of the directors of the company, they could very easily have expressed such intention in a manner that would not give rise to any doubt with respect thereto. Moreover, if we accept appellees' construction, such provision would be meaningless, since without such provision the company under the law had the right, before selling the first lot or lots, to change the restrictions or relieve any lot, or lots, or all of the lots therefrom. See Hill v. Trigg, Tex. Com.App.1926, 286 S.W. 182.

It is true that after setting out the restrictions, it is provided that the grantee to any of the above described property in Live Oaks [no property is described], shall accept the conveyance out of the company subject to all of the restrictions, etc. Since immediately preceding this provision, the company has expressly relieved certain designated lots from the restrictions, such provision could not apply to all of the property in Live Oaks. We think such provision should be construed to mean that the grantee of any of the property in Live Oaks, other than the property which is expressly relieved from the restrictions, or later relieved therefrom under the provi-

sion permitting the company to relieve the same, shall take the property subject to the restrictions.

■ We are, therefore, of the view that the resolution giving the company the right to relieve a lot or lots from the restrictions, when construed in light of the many conveyances made without any reference to restrictions, fails to establish a general plan or scheme for restricting such property.

■ As stated, Reichert, as receiver, deeded all of the property without any reference to any restrictions whatever. Had the company executed such deed its action in so doing would clearly show an intention to relieve the property of the restrictions. We think the deed from the receiver, who stood in the position of the company, should also be so construed. As a general rule, the purchaser from a receiver takes the property with the same rights and burdens it carried when it was held by the debtor and the receiver. 75 C.J.S. Receivers § 258, p. 885. Strauss, who purchased from the receiver, failed to make any reference to restrictions in the great majority of the deeds he executed. In our opinion, he purchased the property with the right to relieve such lots from the restrictions and, by conveying the lots without imposing any restrictions thereon, he accomplished such purpose.

The stipulation filed in this cause shows that the mesne conveyances of lots in the Subdivision subsequent to the original conveyances from Live Oaks, Inc., the receiver and Strauss, aggregated 105. Of that number 58 made no mention whatever of restrictions; 18 were made subject to all easements, restrictions and conditions as shown by records, but no specific reference was given; 4 were made subject to the restrictions affecting the use of the premises, now of record in the County Clerk's office in said county; 4 were made subject to restrictions recorded in Vol. 823, p. 584 of the deed records of Harris County, Texas; 3 were made subject to restrictions shown of

record in Harris County, but only to the extent they are still in effect, and 3 were made subject to such restrictions as may validly apply thereto.

■ Even if the resolution could be construed as adopting a general plan or scheme for restricting the use of the property in question to residential purposes, the deeds from the receiver, and Strauss, together with the various mesne conveyances, indicate that no general plan or scheme for restricting such property was effectually established and carried out, although the property, with the exception of the lots specifically excluded in the resolution and the six lots conveyed to the City for a park, has been used as residential property.

■ Restrictions on the use of property are not generally favored, and provisions relating to restrictions in written instruments concerning real estate must be construed strictly in favor of the grantee and against the grantor, resolving any ambiguity in favor of the free use of the land. Baker v. Henderson, Tex.Com.App., 137 Tex. 266, 153 S.W.2d 465; Briggs v. Hendricks, Tex.Civ.App.1946, 197 S.W.2d 511.

■■ If any restrictions were imposed on appellants' property, they were imposed by said resolution. They were not imposed by the deed from Strauss to Presley which made no mention of building restrictions except in the general warranty clause warranting to defend the title "except as against the reservations, restrictions, covenants and conditions of record applicable to this property as a part of Live Oaks Addition." This exception to the warranty clause did not impose building restrictions on the property, since a covenant of warranty is not a part of the conveyance and does not strengthen, enlarge or limit the title conveyed. City of Beaumont v. Moore, 1947, 146 Tex. 46, 202 S.W.2d 448; Duhig v. Peavy-Moore Lumber Co., 1940, 135 Tex. 503, 144 S.W.2d 878; Bumpass v. Bond, 1938, 131 Tex. 266, 114 S.W.2d 1172. In Bumpass v. Bond, the court held that the

warranty clause in the deed had no effect on the title conveyed and that the deed conveyed the full title. The court affirmed the opinion of the Court of Civil Appeals, 100 S.W.2d 1047, 1049, which held, "A warranty clause in a conveyance, either general or limited, is no part of the conveyance proper; it neither strengthens, enlarges, nor limits the title conveyed, but is a separate contract on the part of the grantor to pay damages in the event of failure of title."

■ Under the foregoing authorities the deed from Strauss to Presley conveyed the property unrestricted, since Strauss merely qualified his warranty clause. As stated, the deed from Presley to Glenney made no mention whatever of building restrictions. The Glenney deed to appellants was subject to restrictions affecting the use of the premises of record in the County Clerk's office, *but only to the extent they are still in effect*. Such provision did not impose any covenants or servitudes on appellants' property, but merely protected the grantor in the event there were any covenants or restrictions on the property still in effect. The reference to restrictions does not refer to any specific instrument of record, and the description is insufficient to identify the restrictions contained in the resolution.

Appellants contend that by force of the provision in the resolution giving the company the right at any time before the sale of a lot or lots to relieve the same from any and all of the provisions, no restrictions contained in the resolution were applicable to any lot in the Subdivision until imposed by deed from the subdivider to the original grantee. For this proposition the appellants rely on the case of Curlee v. Walker, 1922, 112 Tex. 40, 244 S.W. 497, and Gray v. Lewis, Tex.Civ.App.1951, 241 S.W.2d 313, 316, ref., n. r. e. In Gray v. Lewis, this Court stated:

 " * * * on the other hand, the entire property—called generally 'Park Place'—was left, as to restrictions, in such a condition that it could have been

changed by the Company at any time, hence that no restrictions had been placed of record unconditionally as to all the property; in other words, as a whole, it had been retained in such state that the Company might from time to time change any 'restrictions' upon it; * * *."

See also 26 C.J.S. Deeds § 167(2), p. 1151, where it is stated:

"A provision that restrictions in deeds might be changed and that other lots may be sold without restriction has been held to refute the idea of a general plan to be exacted alike from all purchasers for the benefit of each purchaser, * * *."

The existence of a general plan or scheme of development is important in determining the right of remote grantees to enforce a covenant against other grantees whose property has been burdened with the restrictions by the original grantor. Appellants contend that such general plan or scheme does not impose restrictions against the property unless they have been imposed by a valid written instrument. They also contend that in every Texas case in which covenants and restrictions have been enforced the proof was undisputed that the restrictions were placed on the property involved by the deed from the original grantor to the first grantee.

The case of Bethea v. Lockhart, Tex. Civ.App., 127 S.W.2d 1029, 1030, writ ref., cited by appellees, overruled a similar contention made by the appellant to the effect that,

"* * * if the original subdivider of a restricted residential district should fail to incorporate, in each and every deed executed to purchasers of lots in the district, the same restrictions, or if restrictions should be omitted altogether from one or more deeds, there would be a failure of a general building scheme or plan for the development of a restricted residential sub-

division, and that therefore the restriction would become of no effect and might be violated by any one, or at least could not be enforced by persons who were not the original grantor or his privies."

In overruling such contention, the court used the illustration that if appellants' contention was correct, a subdivider might sell hundreds of lots for enhanced prices, upon the representation that the district was to be a restricted residential district, and then by his failure, either through inadvertence or otherwise, to include such restrictions in one deed, destroy the entire scheme or plan for a restricted residential subdivision.

We agree with the holding in Bethea v. Lockhart, supra, that a want of absolute uniformity does not militate against the view that restrictions in a deed are in pursuance of a general scheme for improvement of the property. In the instant case, we do not have one or two, or several, deeds executed without imposing restrictions, but numerous deeds out of the receiver and Strauss, which make no reference to any restrictions whatever. Under these circumstances and in view of the provision in the resolution, giving the company the right to relieve any lot or lots from the restrictions before the conveyance thereof, we are of the opinion that the resolution under the facts of this case, and in the light of the construction which must be given restrictive covenants, did not result in the adoption or the carrying out of any general plan or scheme of restrictions.

We think there is another reason why the restrictions contained in the resolution were not imposed upon the property of appellants. Restrictions on the use of land constitute an interest in land, or a negative easement, and therefore must be imposed by an instrument in writing satisfying the Statute of Frauds. Miller v. Babb, Tex.Com.App.1924, 263 S.W. 253; Clements v. Taylor, Tex.Civ.App.1944, 184 S.W.2d 485; Pierson v. Canfield, Tex.Civ.

App.1925, 272 S.W. 231; Rector v. Anderson, Tex.Civ.App.1927, 1 S.W.2d 699; Allen v. Grant, Tex.Civ.App.1928, 6 S.W.2d 170; Aull v. Kraft, Tex.Civ.App., 286 S.W.2d 460, ref., n. r. e. The case of Rector v. Anderson distinguishes Curlee v. Walker, supra, on the ground that the restrictions there imposed were stipulated in the deed held by the party against whom they were invoked, thus rendering inapplicable the Statute of Frauds.

■ In order to satisfy the Statute of Frauds, an instrument conveying or reserving an interest in land must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land involved may be identified with reasonable certainty. Wilson v. Fisher, 1945, 144 Tex. 53, 188 S.W.2d 150; Osborne v. Moore, Tex.Com.App. 1923, 112 Tex. 361, 247 S.W. 498; Rosen v. Phelps, Tex.Civ.App., 160 S.W. 104, error ref.

The recorded resolution furnishes neither within itself nor by reference to any existing writing the key or means by which the land affected can be identified with reasonable certainty. The entire description of the land consists of the phrase, "the purchaser of a lot, or lots, in Live Oaks." No reference to the amount of land or the city or the county, or the state of its location is given, nor is any reference made to any existing writing for identifying data. Moreover, the resolution was filed for record on December 30, 1929, while the plat of the Second Amended Map of Liveoaks was not filed for record until January 29, 1930. It was also shown that at the time the resolution was filed for record there was a plat of Live Oak Addition, an entirely different addition, on file in Vol. 4, page 40, of the Plat Records of Harris County, Texas. The resolution referring to Live Oaks might be as referable to Live Oak Addition as to Live Oaks, since ordinarily the singular and plural include each other, and no description of the property is given.

Appellees, in their supplemental brief, contend that the resolution containing the restrictions is not void as being in contravention of the Statute of Frauds, and also that appellants did not advance such contention in the trial court and cannot now present the same in this Court. Appellants definitely pleaded the Statute of Frauds as applicable to the resolution, stating that it was insufficient to give a purchaser of a deed in Liveoaks actual or constructive notice of its content, and was insufficient to satisfy the requirements of the Statute of Frauds, Article 3995, R.C.S. 1925, Vernon's Ann.Civ.St. art. 3995, as to the description of the land involved. Moreover, the Statement of Facts shows that counsel for appellants expressly referred to the resolution and the insufficiency of the dedication to comply with the Statute of Frauds. We think that the question was sufficiently raised in the trial court.

Appellees further contend that the resolution shows that it was adopted at a meeting of the board of directors of Live Oaks, Inc., held in the office of its attorneys in Houston, Texas, and was acknowledged in Harris County, and is recorded in the deed records of Harris County, Texas. They also assert that the stipulation which is a part of the record in this case recites that "the subdivision known as Liveoaks comprises a part of the property described in Paragraph I hereinabove." Paragraph I referred to describes the property conveyed to O. F. Holcombe and H. G. Fields as Lot 10, Large Lot 48 of the Obedience Smith Survey in Harris County, Texas, except two specified 1-acre tracts. The stipulation also recites that on December 30, 1929 a resolution of Live Oaks, Inc., the owner of such property, was filed for record in the Deed Records of Harris County, Texas [Vol. 823, p. 584], a true and correct copy of such resolution being attached as Exhibit A and made a part of the stipulation for all purposes. It is appellees' contention that the property is thus sufficiently identified. We do not agree. It is not stipulated that the resolution in question covers the

property owned by Live Oaks, Inc., or that the restrictions are applicable to the lots in such addition.

■ It seems clear that appellants can rely upon the Statute of Frauds unless they have waived it. They have pleaded the Statute of Frauds and there is nothing in their pleading or in the stipulation to show that they have waived the same. In Taber v. Pettus Oil & Refining Co., Tex.Com. App.1942, 139 Tex. 395, 162 S.W.2d 959, 961, 141 A.L.R. 808, respondent contended that if the memorandum in question was not sufficient to satisfy the requirements of the Statute of Frauds, the deposition and agreed statement of facts could be used to meet those requirements. The court stated:

"We cannot approve this proposition. In determining whether the memorandum is sufficient in its descriptions to render the statute inoperative, we are confined to what it contained or referred to on December 11, 1937, and its deficiencies cannot be cured by reference to what may have been said with respect to essential descriptive matters more than two years after suit was filed thereon and more than two years after petitioner had repudiated it as insufficient to comply with the statute."

The court further stated:

"The law looks with favor upon the filing of agreed statements of fact because they make for accuracy and tend to expedite trials, and the practice is to be encouraged rather than discouraged. That policy most certainly would not be served should we sustain respondent's proposition as to the effect to be given the agreed statement of facts in this case."

In Wilson v. Fisher, 1945, 144 Tex. 53, 188 S.W.2d 150, 153, the court in referring to Rosen v. Phelps, Tex.Civ.App., 160 S.W. 104, 105, in which the Statute of Frauds was pleaded, stated:

"Prior to the execution of the contract the parties went upon the ground and inspected the lots, which actually were situated in Rosen Heights Addition of North Fort Worth in Tarrant county. They marked and checked them off upon the plat of the addition * * *. Thus there was no doubt the parties specifically knew the exact lands involved, but the court said that the contract might not be enlarged by such extrinsic evidence and held the same insufficient."

The Supreme Court of South Dakota, in Carpenter v. Murphy, 1918, 40 S.D. 280, 167 N.W. 175, in an action on an oral contract for the sale of land, stated that the parties sought to be charged may admit every term of the oral contract to sell real estate and yet rely upon its invalidity. To like effect, see F. C. Adams, Inc. v. Thayer Estate, 85 N.H. 177, 155 A. 687, 156 A. 697. See also Cornett v. Clere, 1922, 193 Ky. 590, 236 S.W. 1036, 22 A.L.R. 720; and Rowson v. Rowson, 1955, 154 Tex. 216, 275 S.W.2d 468.

■ Appellees further contend that appellant Keith had read the resolution before completing his purchase of the property. He testified that he believed he had read the resolution, but that the loan he procured was on the basis of the property being unrestricted. Since the resolution contains no description of any property sufficient for identification and no key or reference to any writing or record which, upon inquiry, would have given Keith either actual or constructive notice that the property he was purchasing was validly restricted, it is our holding that he took the same unrestricted even if he did read the resolution. See Wiseman v. Watters, 1915, 107 Tex. 96, 174 S.W. 815.

The case of Chandler v. Darwin, Tex. Civ.App., 281 S.W.2d 363, relied upon by appellees, is factually distinguishable from the instant case, in that such case involved an appeal from a temporary injunction and the sole question was whether the trial court abused its discretion in entering the order appealed from. The case is also distin-

guishable in that the restrictions in such case were contained in an instrument which showed that the property was "in Reavilon No. 4, an Addition to the City of Greenville, Texas." In the instant case, there is nothing in the resolution to show the city, county or state where Live Oaks is located. Moreover, there is nothing in the court's opinion in Chandler v. Darwin to show that the Statute of Frauds was pleaded and relied upon, or that the sufficiency of the description of Reavilon No. 4 was tested in the light of decisions involving such statute.

For the reasons stated, we have concluded that the judgment of the trial court should be reversed and rendered.

Reversed and rendered.

Judgment rendered and opinion filed May 19, 1960.