# Supreme Court of Texas

No. 23-0344

425 Soledad, Ltd. and 425 Loneliness, Ltd.,
*Petitioners,*

v.

CRVI Riverwalk Hospitality, LLC,
*Respondent*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued October 3, 2024**

JUSTICE BLAND delivered the opinion of the Court.

In this appeal, we first decide whether an unrecorded parking agreement is an easement that burdens property located in downtown San Antonio. If so, then we decide whether a lender acquired its mortgage on the property free of the easement, or alternatively, whether the lender's corporate affiliate, which purchased the property from a receiver, is a bona fide purchaser that independently took it free of the easement.

The trial court ruled that the parking agreement is an easement, and it rejected the lender's and its affiliate's bona fide purchaser defenses. The court of appeals reversed. It agreed that the parking agreement is an easement but concluded that the lender took the loan without notice of the easement and that the lender's lack of notice "sheltered" its affiliate from enforcement of the easement.

We agree with both courts that the parking agreement is an easement. Contrary to the court of appeals, however, we conclude that the trial court correctly enforced the easement against the affiliated owner because both the lender and its affiliated owner had notice sufficient to remove any bona fide purchaser protection. Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

**I**

**A**

This dispute concerns an office building, a hotel, and a parking garage connected via underground tunnels. A common owner originally held the three properties. Petitioner 425 Soledad, Ltd. acquired the office building in 2005. As part of the sale, the parties executed a parking agreement. The agreement dedicates garage space for the office building, reserving up to 150 parking spaces on the fourth floor for building occupants who execute a license agreement and pay an annually adjusted fee.

Pertinent to this dispute, the parties resolved that the parking agreement would "run with the land and inure to the benefit of, and be binding upon, [the parties] and their respective successors and assigns

2

in title." The agreement was terminable if the property converted to non-parking use. Both parties signed the agreement, but neither recorded it in the county's real property records.

In 2006, HEI San Antonio Hotel, LP purchased the parking garage and the hotel. HEI financed the purchase through a loan from Merrill Lynch Mortgage Lending, Inc. The loan included a $33,000,000 A-Note and a $26,000,000 B-Note, secured by a mortgage on the garage and hotel property. At that time, Merrill Lynch knew of the parking agreement, as evidenced by its request that 425 Soledad attest that the agreement remained "in full force and effect."

In 2008, Cypress Real Estate Advisors purchased the B-Note from Merrill Lynch through its special purpose entity, CRVI Crowne Plaza. As part of the purchase, Merrill Lynch made "no representation or warranty and assume[d] no responsibility with respect to any statements, warranties or representations made in or in connection with the [l]oan [d]ocuments," except those made by Merrill Lynch. Merrill Lynch represented that the "[l]oan [d]ocuments contain[ed] all of the material agreements regarding the [p]roperty among [the] [b]orrower, [l]ender, and [g]uarantor." CRVI Crowne confirmed that it would undertake its own duty of inquiry into "the [l]oan [a]greement, the [l]oan [d]ocuments and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into [the note purchase]." To that end, a Cypress employee reviewed Merrill Lynch's materials,[1] including a market report and

_____

[1] Cypress purchases and holds real estate through special purpose entities that have no internal management. The entities rely on Cypress

3

financial statements. Merrill Lynch also provided Cypress with the closing documents for the loan agreement between Merrill Lynch and HEI. Appendices to those documents included a "Parking Consultant's Consent and Subordination of Parking Services Agreement" in the loan documents section and a "Parking Services Agreement" in the miscellaneous documents section. The Cypress employee visited the properties and spoke with management. He knew that "somebody was running the garage"; that tunnels connected the office building, hotel, and garage; and that the office building and garage had a similar architectural style. Deed records reflected an easement granting tunnel access and identified the office building as an owner of the garage at the time it was recorded. Despite this information, the Cypress employee did not ask either Merrill Lynch or HEI for the parking agreement. HEI possessed a copy of the agreement in its files.

In 2010, Cypress anticipated that HEI would default on its note and deliberated whether to acquire the hotel and garage. Anticipating a possible change-in-control event, the loan servicer undertook an appraisal for the properties. The same Cypress employee who conducted diligence during the note purchase evaluated the appraisal. It referred to a parking agreement in its description that "[a]pproximately 150 spaces in the Soledad Street garage are leased to the owner of a nearby office building for $75 per space per month and [this] gives the office building daytime access to the spaces." The Cypress employee testified,

employees to conduct business. Thus, although CRVI Crowne held the B-Note, Cypress personnel performed all purchase-related diligence efforts.

4

however, that he did not read beyond the appraisal's first page and thus personally was unaware of this information.

As HEI neared default, Cypress placed the properties into a receivership through an action in state district court. Cypress then formed Respondent CRVI Riverwalk Hospitality to buy the hotel and garage from the receiver. Like CRVI Crowne when it purchased the note, CRVI Riverwalk assumed a duty of inquiry in connection with the property purchase, agreeing to rely "upon its own determination of the value and condition of the [p]roperty and not on any information provided by [the] [s]eller." A different Cypress employee conducted diligence for this deal.

This employee noticed monthly parking revenue in the financial statements and he understood that users had monthly parking arrangements. He did not ask, however, to see any parking agreements. He did not familiarize himself with the past ownership of the three properties and "didn't think anything" of the similar architectural design of the office building and parking garage. But he knew about a recorded tunnel easement between the office building and garage.

By this time, Cypress had multiple appraisals, each describing a parking agreement as encumbering the property. But the Cypress employee "cherry picked" which materials to read, and the appraisals were not among the documents he selected for review. The employee also did not ask HEI, the property owner, for information. He instead looked no further than the court-appointed receiver. He never spoke with the other Cypress employee who had conducted diligence in connection with

5

the B-Note purchase from Merrill Lynch. When the diligence period ended, CRVI Riverwalk bought the hotel and garage.

In 2016, an office building unit holder requested garage space for its occupants. CRVI Riverwalk refused to accommodate the request, and 425 Soledad sued to enforce the parking agreement.

**B**

425 Soledad sought a declaratory judgment that the parking agreement is an enforceable instrument that runs with ownership of the garage.[2] In addition, it brought claims for breach of contract and interference with its possessory rights. CRVI Riverwalk counterclaimed, seeking a declaratory judgment that the parking agreement is not binding against it. CRVI Riverwalk also claimed protection as a bona fide purchaser of the property that took without notice of the agreement.

After a bench trial, the trial court concluded that the parking agreement is an enforceable easement appurtenant. Though not recorded, the court found that Merrill Lynch's "knowledge of the [p]arking [a]greement was imputed to CRVI Crowne through the Assignment and Assumption Agreement by which CRVI Crowne acquired the B-Note." The closing documents for the original loan reference a parking agreement in the miscellaneous documents section, placing CRVI Crowne on notice such that "there was enough information to trigger reasonable inquiry by a prudent purchaser . . . which inquiry would have led to the discovery of the [p]arking [a]greement," defeating

---

[2] During this litigation, 425 Soledad sold the office building to an entity called 425 Loneliness, which was joined as a party. For ease of reference, we refer to these two entities collectively as "425 Soledad."

CRVI Riverwalk's bona fide purchaser claim. The trial court awarded declaratory relief and attorney's fees to 425 Soledad.

The court of appeals agreed with the trial court's conclusion that the agreement is an easement appurtenant, but it held that 425 Soledad could not enforce the unrecorded easement against CRVI Riverwalk.[3] The court relied on Property Code Section 13.001, which provides that an unrecorded interest in real property "is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice."[4] Accordingly, it concluded that the trial court erred in imputing Merrill Lynch's notice of the parking agreement to CRVI Crowne. Despite the trial court's finding that "there was enough information to trigger reasonable inquiry," the court of appeals accepted CRVI Riverwalk's argument that it should be "sheltered" from enforcement of the easement as a successor in title to a creditor who purchased the note without notice of the easement. The court reversed the attorney's fees awarded to 425 Soledad, and it remanded the case to the trial court for further proceedings to determine attorney's fees favoring CRVI Riverwalk.

While the case was on appeal, CRVI Riverwalk sold the hotel and garage to a third party, but CRVI Riverwalk retained the right to continue this suit, including the right to recover its attorney's fees. We granted review.

---

[3] 691 S.W.3d 644, 649, 655 (Tex. App.—San Antonio 2022).

[4] Tex. Prop. Code § 13.001(a).

7

## II

As a preliminary matter, 425 Soledad contends that CRVI Riverwalk no longer has an interest in the outcome of this suit because CRVI Riverwalk sold the garage property after filing its notice of appeal. A plaintiff must have a justiciable interest in the outcome of a suit to seek a judicial determination.[5] An interest is sufficient to confer standing if "a real controversy between the parties, which . . . will be actually determined by the judicial declaration sought," exists.[6] Without standing, a court lacks jurisdiction to resolve the asserted claims.[7] Standing is a question of law we review de novo.[8]

CRVI Riverwalk continues to have a justiciable interest in this controversy because it remains liable for the attorney's fee award against it. A dispute over attorney's fees may constitute a live controversy.[9] In this case, it is necessary to determine whether the parking agreement is an enforceable easement, as that answer informs

---

[5] *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018).

[6] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (internal quotation marks omitted); *see Grassroots Leadership, Inc. v. Tex. Dep't of Fam. & Protective Servs.*, 646 S.W.3d 815, 820 (Tex. 2022) (explaining that the alleged injury must be concrete, meaning "'threatened or actual'—not hypothetical" (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 241 (Tex. 2020))); *Tex. Right to Life v. Van Stean*, ___ S.W.3d ___, 2024 WL 4863170 at *2 (Tex. Nov. 22, 2024) (explaining that standing is a prerequisite to subject-matter jurisdiction deriving from the Texas Constitution's provisions for separation of powers and open courts).

[7] *H.S.*, 550 S.W.3d at 155.

[8] *Id.*

[9] *E.g.*, *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642–43 (Tex. 2005).

8

the resolution of the parties' competing claims for fees.[10] Thus, we conclude that CRVI Riverwalk retains standing to pursue this suit. Accordingly, we proceed to address the parties' claims.

## III

CRVI Riverwalk resists enforcement of the parking agreement on three grounds. First, it contends that the parking agreement is not an easement because it is terminable, does not use the word "easement," and violates the rule against perpetuities. Second, it contends that it is "sheltered" from enforcement of the easement because CRVI Crowne was a bona fide mortgagee under Section 13.001 and CRVI Crowne's property interest arose from the borrower's default. Finally, it contends that it is a bona fide purchaser in its own right. We address each argument in turn.

## A

A property owner may relinquish a portion of his right to exclude others through granting an easement.[11] An easement is a nonpossessory interest that authorizes its holder to use property for a particular

---

[10] *See id.* at 643 ("The controversy is live because an affirmative answer would necessitate a remand to the trial court to consider whether an award of attorney's fees is appropriate in light of the changed status of prevailing parties. Accordingly, we will address the merits . . . ."). The agreement between CRVI Riverwalk and the third-party purchaser confirms that CRVI Riverwalk is the beneficiary of any potential fee award.

[11] *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002).

9

purpose.[12] Easements may be express or implied.[13] An easement appurtenant requires a dominant estate, which is granted an access right, and a servient estate, which is burdened by that right.[14] Easements appurtenant may attach to, and run with, the property.[15]

The executed parking agreement expressly identifies two properties: the parking garage and the office building. It gives the owner of the office building a limited right to possess and use dedicated spaces in the garage for the building's occupants. The right runs with the garage property and binds future owners. These terms satisfy the requirements to create an easement appurtenant.

CRVI Riverwalk's arguments to the contrary are unpersuasive. It observes that the agreement terminates if the property is no longer used as a parking garage and therefore it cannot be a true easement. We have recognized, however, that parties may create easements with contingent terminating language.[16] CRVI Riverwalk next points out that the parties did not use the word "easement," but this ignores that an easement may be implied, belying a requirement of magic words to

---

[12] *Id.*

[13] *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 205 (Tex. 1962) (discussing both express and implied easements).

[14] *Id.* at 207.

[15] *Id.* at 203, 207.

[16] *See, e.g.*, *Scott v. Walden*, 165 S.W.2d 449, 451 (Tex. [Comm'n Op.] 1942) (interpreting a determinable easement that terminated based on necessity for ingress and egress).

create an express one.[17] Use of "easement" in creating a possessory right is clarifying but not essential if the granting terms function as an easement and run with the land.[18]

Finally, CRVI Riverwalk invokes the rule against perpetuities, which invalidates the transfer of a property interest uncertain to vest "within twenty-one years after the death of some life or lives in being at the time of the conveyance."[19] The rule does not apply to interests that vest at their creation.[20] The parking agreement vested immediately upon signing, making the rule against perpetuities inapplicable. We hold that the parking agreement is an easement appurtenant.

**B**

Next, we examine whether CRVI Crowne's purchase of the B-Note from Merrill Lynch protects it from enforcement of the easement under Property Code Section 13.001.[21] The protection is an affirmative

---

[17] *See Drye*, 364 S.W.2d at 205 ("[E]asements are sometimes necessarily implied.").

[18] *See Minihan v. O'Neill*, No. 04-18-00847-CV, 2020 WL 444381, at *3 (Tex. App.—San Antonio Jan. 29, 2020, no pet.) ("It is not necessary to use the term 'easement,' or any other particular words, to create an express easement."); *Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex. App.—Tyler 2005, no pet.) ("Generally, any language that clearly shows an intention to grant an easement is sufficient for the purpose; no special form or particular words need be employed.").

[19] *BP Am. Prod. Co. v. Laddex, Ltd.*, 513 S.W.3d 476, 479 (Tex. 2017) (quoting *Peveto v. Starkey*, 645 S.W.2d 770, 772 (Tex. 1982)).

[20] *Id.* at 480.

[21] *See* Tex. Prop. Code § 13.001(a) ("A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless

defense that voids an unrecorded interest as to a creditor who takes without notice of that interest—thus extending some bona fide protections to mortgagees. [22]

CRVI Riverwalk did not foreclose on the mortgage that CRVI Crowne (a separate legal entity) purchased from Merrill Lynch; instead, CRVI Riverwalk purchased the property from HEI through the receiver. Despite the lack of a foreclosure, CRVI Riverwalk argues that the statute protects a subsequent purchaser of the property—even one who takes with notice of an unrecorded interest—if the purchase essentially liquidated the loan and the lender lacked notice of the interest. Thus, CRVI Riverwalk claims, CRVI Crowne's bona fide mortgagee status should "shelter" CRVI Riverwalk from enforcement of the easement, even if CRVI Riverwalk cannot independently establish it was a bona fide purchaser.

---

the instrument has been acknowledged, sworn to, or proved and filed for record as required by law."); *id.* § 13.001(b) ("The unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument."); *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) ("To receive this special [bona fide purchaser] protection, one must acquire property in good faith, for value, and without notice of any third-party claim or interest."); *Hous. Oil Co. of Tex. v. Hayden*, 135 S.W. 1149, 1152 (Tex. 1911) ("To constitute [an innocent purchaser], three elements were essential: Valuable consideration, absence of notice, and good faith.").

[22] Tex. Prop. Code § 13.001(a); *Madison*, 39 S.W.3d at 606; *see Reverse Mortg. Funding, LLC v. Robertson*, 599 S.W.3d 52, 55 (Tex. App.—Texarkana 2020, no pet.) ("Under section 13.001 . . . a lender can be a bona fide mortgagee, if the lender takes a lien in good faith, for valuable consideration, and without actual or constructive notice of outstanding claims. A bona fide mortgagee is entitled to the same protections as a bona fide purchaser." (citation omitted) (quoting *Noble Mortg. & Invs., LLC v. D & M Vision Invs., LLC*, 340 S.W.3d 65, 76 (Tex. App.—Houston [1st Dist.] 2011, no pet.))).

Of the three statutory requirements for bona fide mortgagee status, only notice is at issue in this case. For property interests, notice has two forms: actual and constructive.[23] Actual notice is personal knowledge or "those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed."[24] When a duty to inquire exists, "negligent ignorance has the same effect in law as actual knowledge."[25]

A recorded interest provides constructive notice, and a purchaser takes property subject to the recorded interest regardless of whether the purchaser had actual notice.[26] But the easement in this case was unrecorded when CRVI Crowne purchased the B-Note. Thus, it had no constructive notice of the easement. The question presented is whether it had actual notice.

Merrill Lynch, HEI's original creditor, possessed actual notice of the parking agreement. It requested 425 Soledad to confirm in writing that the agreement remained "in full force and effect," ratifying the agreement's existence as a source of income to support the loan. CRVI

---

[23] *Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 631 (Tex. 1950).

[24] *Id.* at 632.

[25] *Id.*

[26] *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982) ("[A] purchaser is bound by *every* recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link of the chain of title under which he claims." (quoting *Wessels v. Rio Bravo Oil Co.*, 250 S.W.2d 668, 680 (Tex. App.—Eastland 1952, writ ref'd))); *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 551 (Tex. App.—Austin 1999, pet. denied) (holding that a party was on constructive notice of provisions mentioned in a recorded assignment).

Crowne, however, argues that it lacked actual notice and thus obtained Section 13.001 protection when it purchased the B-Note from Merrill Lynch.[27]

CRVI Crowne undertook a duty of inquiry. Based on the materials available, reasonable exercise of its inquiry obligation would have revealed the parking agreement. The closing binder from Merrill Lynch referred to a parking services agreement. The recorded tunnel access easement identified the garage as belonging to the bank (now the office building). HEI's files contained a copy of the agreement. The trial court imputed Merrill Lynch's notice to CRVI Crowne, as CRVI Crowne succeeded to Merrill Lynch's obligations under the note. Even without such imputation, the record establishes that CRVI Crowne possessed adequate information to cause a reasonable acquirer of a note charged with its own diligence to inquire further. CRVI Crowne is held to the knowledge such an inquiry would have revealed.[28]

---

[27] *See* Tex. Prop. Code § 13.001(a).

[28] *See Paris Grocer Co. v. Burks*, 105 S.W. 174, 175 (Tex. 1907) ("Having such opportunities, of which prudence dictates that he shall avail himself, one who has omitted to do so will not be heard to deny that he had notice of a fact of the existence of which he was thus put upon inquiry."); *Wethered's Adm'r v. Boon*, 17 Tex. 143, 150 (1856) ("The general doctrine is, that whatever puts a party upon an inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding." (quoting 4 James Kent, Commentaries on American Law 179 (6th ed. 1848))); *Flack*, 226 S.W.2d at 632 (explaining that whatever fairly puts a person upon inquiry provides actual notice of the facts which would have been discovered by reasonable use of the means at hand); *Thompson v. Six Shooter Enters., LLC*, 633 S.W.3d 107, 115 (Tex. App.—El Paso 2021, no pet.) ("And, in a more comprehensive sense, the term 'notice' also embraces knowledge of all those facts which reasonable inquiry would have disclosed.").

Because we resolve this case on the notice element, we need not reach whether the statute could shelter a subsequent property purchaser by relying on a lender's Section 13.001 protection. We note, however, that a receiver does not transfer greater rights than the owner of the property possesses.[29] Rather, purchasers from a receiver "step into the shoes" of the debtor, subject to the receiver's rights.[30] HEI, the owner of the property purchased through the receiver's sale, had actual notice of the parking agreement and a copy of the agreement in its files.

## C

Finally, CRVI Riverwalk asserts that it lacked notice of the easement, making it a bona fide purchaser with no need for shelter through CRVI Crowne. The trial court found otherwise. When reviewing the legal sufficiency of evidence, we consider "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."[31] We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not.[32]

---

[29] *See Durham v. Scrivener*, 259 S.W. 606, 611 (Tex. App.—Austin 1923) ("A receiver has no title, but only temporary possession . . . ."), *aff'd*, 270 S.W. 161 (Tex. Comm'n App. 1925, judgm't adopted); *see also Ex parte Britton*, 92 S.W.2d 224, 226 (Tex. 1936) (noting that a receiver is an arm of the court, appointed to receive and preserve property involved in the suit).

[30] *Neel v. Fuller*, 557 S.W.2d 73, 76 (Tex. 1977); *see Keith v. Seymour*, 335 S.W.2d 862, 867 (Tex. App.—Houston 1960, writ ref'd n.r.e.) ("As a general rule, the purchaser from a receiver takes the property with the same rights and burdens it carried when it was held by the debtor and the receiver.").

[31] *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

[32] *Id.*

CRVI Riverwalk contractually undertook a duty to inquire into the materials concerning the property before purchasing it. And the same materials that would have revealed the parking agreement through CRVI Crowne's diligence before it purchased the B-Note were available to CRVI Riverwalk. What is more, CRVI Riverwalk had received multiple appraisals describing the parking agreement, and HEI possessed a copy of it that CRVI Riverwalk never requested. We hold that the evidence is sufficient to support the trial court's finding that CRVI Riverwalk was on inquiry notice and that a reasonable inquiry would have revealed the agreement. An employee conducting diligence may not ignore readily available facts to insulate his employer through a Section 13.001 defense.[33]

\*　　\*　　\*

We hold that the parking agreement is an easement appurtenant to the garage property. Because it was unrecorded, a subsequent purchaser or mortgagee without notice of the easement would take free of it. CRVI Crowne, however, had a duty to inquire into encumbrances before it purchased the note. The facts available to CRVI Crowne were such that the exercise of reasonable diligence would have revealed the easement. CRVI Crowne thus took the B-Note with notice of it. For the same reason, CRVI Riverwalk is not a bona fide purchaser of the property from HEI, through a receiver. Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court

---

[33] *Flack*, 226 S.W.2d at 632.

16

for entry of judgment and further proceedings consistent with this opinion.

_____
Jane N. Bland
Justice

**OPINION DELIVERED:** December 31, 2024