**Tom E. STEWART et al., Appellants,**

v.

**Mrs. Laura VALENTA et al., Appellees.**

No. 3703.

Court of Civil Appeals of Texas.

Eastland.

Nov. 2, 1962.

Rehearing Denied Nov. 23, 1962.

W. R. Smith, Edward Penshorn, San Antonio, for appellants.

Edward W. Halbardier, Morriss, Morriss, Boatwright & Lewis, Carl Wright Johnson, W. Pat Camp, William C. Church, Jr., Bill Finck, San Antonio, for appellees.

COLLINGS, Justice.

Mrs. Laura Valenta and certain other lot owners out of an approximately 19.69 acre tract of land brought this suit against 50 other owners of lots therein, including Tom E. Stewart, and against 7 lien holders, to set aside, cancel and hold void the restrictive covenants contained in deeds from a common grantor of such 19.69 acre tract. Nineteen of the named defendants filed answers contesting the cancellation of such restrictive covenants. Other defendants either intervened and sought affirmative relief in accord with that sought by plaintiffs or disclaimed any interest therein. Upon a trial before the court without a jury, judgment was rendered cancelling, setting aside and declaring null and void and of no force and effect the restrictive covenants in controversy. The contesting defendants have appealed.

The trial court filed findings of fact and conclusions of law. Appellants urge points contending that the court erred:

1. In finding that the common grantor of the 19.69 acre tract did not intend any uniformity or scheme of covenants and restrictions covering the entire tract; 2. In finding that there was no agreement between the common grantor and its grantees as to any uniformity or overall scheme or plan of covenants or restrictions applying to the 19.69 acre tract; 3. In finding that there was no general uniform plan or scheme of covenants and restrictions applying to all the 19.69 acres which would run with the titles conveyed by the common grantor; 4. In finding that there has been a manifest general change in the neighborhood to commercial use; 5. In

finding that the higher per front foot value of the 19.69 acre tract for business purposes relative to the lower value if restricted to residential uses only is confiscatory and unreasonable; 6. In finding that the highest and best use of the 19.69 acres is for commercial purposes; 7. In finding that the balance of hardships favors appellees and that no money damage would result to any property in value by removal of the restrictions; 8. In finding that the covenants and restrictions were merely personal between the common grantor and its immediate grantees and did not run with the titles; 9. In finding that there is no privity of estate, contract or mutuality of enforcement of the restrictions as between the present owners of the 19.69 acre tract; 10. In concluding that the restrictions and covenants are invalid and unenforceable and, 11. In entering judgment nullifying such restrictions and covenants.

The 19.69 acre tract in question is located on the west side of San Pedro Avenue in San Antonio and is bi-sected by Veda Mae Drive. The original 'owner and common grantor was South Texas Properties Company. In a period of slightly more than two years the common grantor divested itself of title to the entire tract by a series of 8 conveyances. The first instrument executed by such grantor was a conveyance to York which covered a 4 acre tract. It contained a provision that if prior to improvements being built on such 4 acres the grantor should place restrictions on the adjoining property, then the grantee should be bound by the identical restrictions. The adjoining property was described as the remainder of the 19.69 acre tract. Appellees, Mrs. Laura Valenta and Mrs. Laura Miller, are owners of the 4 acre York tract and no improvements have ever been made thereon. One of the conveyances by the common grantor covered a .74 acre tract for a public road which is known as Veda Mae Drive. Each 'of the other 6 conveyances contained identical provisions concerning restrictions on the use of the property 'conveyed. The provisions

in each of the deeds in this respect were in substance that the property conveyed should not be used for other than residential purposes and that no structure should be permitted other than single family dwellings with garage for not more than 3 cars and servants' quarters and laundry room; provisions for spacing of buildings relative to the front line and side streets; provisions for the size and area on any subdivision or lot upon which a residential structure could be built and that no dwelling costing less than $8,000.00, exclusive of garage and servants' quarters, should be permitted; that the ground floor area of the main structure, exclusive of open porches and garages, should not be less than 1500 square feet, and certain other provisions and restrictions concerning the use and occupancy of the property conveyed. The York deed conveying the original 4 acre tract contained no provisions for the enforcement of restrictions except the provision to the effect that the grantee therein should be bound by the restrictions, if any, placed on adjoining property. The last conveyance by the common grantor was the Shearer deed covering a 4.28 acre tract. This deed contained no provision concerning enforcement. The enforcement provisions in the other deeds were identical and were as follows:

"Invalidation of any of these restrictions shall not affect in any manner any of the other provisions thereof, which shall remain in full force and effect. If the grantee, his heirs or assigns, violates or attempts to violate any of the restrictions herein contained, it shall be lawful for any other person or persons owning any real property situated in the tract of land now owned by grantor out of which the above described tract is hereby conveyed, to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such restrictions, either to prevent the violation thereof or to recover damages or other compensation for such violation."

Such deeds, except the conveyance to Shearer, also contained a reservation in the grantor of a right to omit restrictions from unsold portions of the 19.69 acre tract as follows:

"The restrictions herein contained shall apply only to the property hereby conveyed, and grantor shall not be under any obligation, either express or implied, to subject the remainder of the property which grantor owns in the vicinity to such restrictions or any part thereof."

The deeds, except the Shearer deed, also contained a provision reserving to the grantor the right to release the restrictions which is as follows:

"Grantor reserves to itself, and its successors, the right to release any or all of the above described restrictions as to any or all of such property."

■ Restrictions on the use of property are not favored and when they appear in instruments involving realty they are construed strictly in favor of the grantee and against the grantor, resolving any ambiguity in favor of the free use of the land. Baker v. Henderson, 137 Tex. 266, 153 S.W. 2d 465. Such restrictions to be effective must have a contractual basis "arising out of a contract imposing on the grantor and the grantee the obligation to observe the restrictions." 26 C.J.S. Deeds § 162(1), p. 1084.

■ In the instant case there was no contractual relation which imposed upon both the grantor and the grantees in the deeds in question the obligation to observe the restrictions therein set out. No instrument of dedication indicating an intention to impose restrictions upon all the property involved was executed and filed of record by the common grantor. The restrictions sought to be enforced are found only in the separate deeds as above indicated. Each of the deeds provided that the restrictions should apply only to the property conveyed and that the grantor should not be obligated to subject the remainder of the property to said restrictions. Each of the deeds specifically reserved in the grantor the right to release the restrictions as to any or all of the property involved. Since the grantor in each of such deeds was under no obligation the restrictions set out therein were not effective under a general plan, applicable, beneficial and binding alike to each and all of the purchasers. The restrictions were merely personal between the common grantor and the immediate grantee. Green v. Gerner, Tex.Com.App., 289 S.W. 999. In 26 C.J.S. Deeds § 167(2), at page 1151 it is stated that:

"A provision that restrictions in deeds might be changed and that other lots may be sold without restriction has been held to refute the idea of a general plan to be exacted alike from all purchasers for the benefit of each purchaser * * *."

In 19 A.L.R.2d at page 1282 it is stated that:

"The weight of authority supports the rule that a reservation by the common grantor of a general power to dispense with the restrictions on particular lots negatives the purpose of uniform development from which the mutuality of right among lot owners in a platted subdivision is deemed to arise. Accordingly, where such a power is reserved, one lot owner cannot enforce the restrictions as against another lot owner even though the dispensing power of the common grantor has not been exercised."

In the case of Rose v. Jasima Realty Co., 218 App.Div. 646, 219 N.Y.S. 222, it is aptly stated, that a covenant which the grantor may cancel at will cannot be for the benefit of any one but himself. Also see Keith v. Seymour, Tex.Civ.App., 335 S.W.2d 862 (N.R.E.); Davis v. Congregation Shearith Israel, Tex.Civ.App., 283 S.W.2d 810 (N. R.E.); Gray v. Lewis, Tex.Civ.App., 241 S.W.2d 313 (N.R.E.); Pierson v. Canfield, Tex.Civ.App., 272 S.W. 231.

Appellant particularly urges that the right retained in the common grantor in this case to modify the restrictions does not negative the uniformity of the restrictions over the entire tract and render such restrictions unenforceable. In this connection appellant particularly urges the holdings in Hooper v. Lottman, Tex.Civ.App., 171 S.W. 270 and Norwood v. Davis, Tex. Civ.App., 345 S.W.2d 944. Those cases are distinguishable from the instant case in that in each of them the common grantor, either by an instrument of dedication or by resolutions of a board of directors imposed restrictive covenants to preserve the residential character of the property in a subdivision and the deeds in those cases were insubstantial compliance with the instrument of dedication. In the instant case the 19.69 acre tract was not subdivided by the common grantor. There was no instrument of dedication filed of record nor was there any resolution adopted by a board of directors providing for building restrictive clauses in deeds conveying such property. As heretofore indicated the restrictions sought to be enforced are found only in the separate deeds executed by the common grantor.

None of the deeds by the common grantor provided that the grantee had the right to enforce the restrictions against the grantor or any other owner of the land in question. The only enforcement provision concerning the restriction was to the effect that the grantor or subsequent grantees could enforce them against the grantee of that particular deed. The provision was "any other person * * * owning any real property situated in the tract * * * now owned by grantor", should have the right to an appropriate legal or equitable remedy against the grantee if he violated the restrictions set out in his deed. The "other person" owning such real property in the tract would necessarily be a subsequent grantee of the common grantor. When this provision is considered in connection with the further provision in the deeds that "grantor reserves to itself and its successors the right to release any or all of the * * * restrictions" it is difficult to see how there could be any mutuality of the right of enforcement of any such restrictions.

In our opinion the court did not err in finding (1) that the common grantor, South Texas Properties Company, did not intend a uniform plan or scheme of restrictive covenants; (2) that there was no agreement between the common grantor and its grantees as to an over-all scheme or plan of restrictive covenants; (3) that there was no general uniform plan or scheme of restrictive covenants which would run with the titles; (4) that the covenants and restrictions set out in said deeds are merely personal between the common grantor and its immediate grantees; and, (5) that there was no privity of estate, contract or mutuality of enforcement as between present owners of the entire tract.

We also overrule appellants' points urging that the court erred in finding a manifest general change in the neighborhood to commercial use; that the highest and best use of the 19.69 acres is for commercial purposes; that the higher per front foot value of the tract for business purposes relative to the lower value if restricted to residential purposes only is unjust, inequitable and unreasonable and that the balance of any hardships favors appellees and that no money damage would result to any property value by removal of the restrictions. The evidence supports these findings and the judgment based thereon.

In 26 C.J.S. Deeds § 171, at page 1177 and 1178, it is indicated that equity will not ordinarily take cognizance of a violation of a restriction where there has been such a change in the character of the neighborhood that "it would be oppressive, purposeless, unjust, or inequitable to give the restriction effect * * *." It is indicated that in such cases a party seeking enforcement "is relegated to the action at law for damages."

The trial court found upon sufficient evidence that the 19.69 acre tract is surrounded on three sides by business property. The tract is two blocks long north and south facing on San Pedro and is one block in depth. At the north end of the tract across Oblate Drive is the Town and Country Motel, with its east front on San Pedro Avenue and extending about two blocks west on Oblate Drive. On the south of the 19 acre tract across the Jackson Keller Road is a filling station. San Pedro Avenue runs north and south along the east side of the 19 acres in question. This avenue had previously been a two-lane road but has been made into a four-lane highway, being United States Highway 281. On the east side of San Pedro directly across the street from the property in question there is commercial and business property. Prior to August, 1950, the tract in question was outside the city limits of San Antonio but at that time it was annexed and taken into the city. The northern portion of the property has been rezoned by the city as a local retail district.

There is evidence to the effect that the property in question if restricted to residential use has a value of between $40.00 and $50.00 per front foot, but that its value for business purposes would be between $200.00 and $300.00 per front foot; that the highest and best use of all of such property is commercial. The 19.69 acres is two blocks in length facing on San Pedro Avenue on the east and facing Grotto Street on the west and is only one block in depth. The distance between the two streets is about 369.20 feet on the north end and 381.48 feet on the south end. There was evidence to the effect that many businesses suitable to the area require a depth more than 200 feet, such as large community centers which sometimes use up to 600 feet. The 19 acre tract extends two long blocks north and south and there is ample evidence to the effect that the highest and best use of both of these blocks is commercial; that the use which is most suitable to the owners from a profit and investment standpoint and which would return the greatest gain to the property owners is a commercial use.

Within the 19.69 acre tract, itself, one house on San Pedro is used in the operation of a nursery school and one house on Grotto Street is a triplex. Other than this, no property within the tract in question is now put to commercial use. The actual use of the property within this tract does not of itself show a change of conditions which would support an annulment of valid deed restrictions.

The fact that the tract has been annexed and taken into the city indicates a certain change of conditions but does not necessarily show a change in its residential character. Even the zoning ordinance in the city is ineffective in itself to destroy valid restrictions set out in a deed, although it is some evidence of a change of conditions involving the residential character of the area. It is held that changes in surrounding territory alone does not justify the destruction of valid restrictions. It is also held that a change of conditions of a relatively small portion of a restricted area, making such portion more valuable as business property than it would be for the restricted residential use, is not sufficient to relieve such property from the restrictions. Abernathy v. Adoue, 49 S.W.2d 476. Each of these facts, however, is material and evidentiary in determining the question of whether there has been such a radical change in the character of a neighborhood that the enforcement of the restrictions would be oppressive or inequitable. The radical change in the neighborhood and the detrimental effect of imposing the restrictions is further evidenced by the fact that the owners of most of the land either desire or do not object to a cancellation of the restrictions. The findings and action of the trial court in this respect are not as contended by appellants in conflict with the holding of our Supreme Court in Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943. On the contrary the judgment is in accord therewith in refusing to enforce restrictions when there has been such change

**916**

of conditions in a restricted area that it is no longer possible to secure in a substantial degree the benefits sought to be realized thereby.

The evidence shows that "the highest and best use of all" the property in question, even that facing west on Grotto Street, is commercial and that such commercial use will return the greatest gain to the property owners from a profit standpoint. The evidence as a whole, in our opinion, supports the finding of a manifest general change in the neighborhood to commercial use. It shows a change which is so radical "as practically to destroy the general or essential objects and purposes" of a restrictive covenant. 26 C.J.S. Deeds § 171, p. 1178; Scanlon v. Dewhurst, Tex.Civ.App., 197 S.W.2d 518.

For the reasons stated appellants' points are overruled and the judgment of the trial court is affirmed.