E. C. HUNTER and Wife, Stella Hunter, et al., Appellants,

v.

M. A. PILLERS, Appellee.

No. 7216.

Court of Civil Appeals of Texas, Beaumont.

Feb. 11, 1971.

Clayton Heare, Amarillo, for appellants.

O. M. Calhoun, Amarillo, for appellee.

KEITH, Justice.

The appeal is from a judgment entered in a declaratory judgment action which cancelled and set aside certain restrictive covenants in a deed which prevented plaintiff from using the property for other than residential purposes.

*Statement of Case*

Vaughan's Hill Top Addition to the Town of Shamrock was dedicated in 1926, by the filing of the plat for record, but the dedication contained no restrictions on the use to be made of the lots therein. About a year later, and before any lots had been sold, the entire subdivision was acquired by E. C. Hunter, but he made no sales of lots until about 1946–1947. At that time, Hunter sold one entire block (No. 203) to two grantees, one of whom was his daughter, by general warranty deeds ·containing no use restrictions. About this same time, he also sold lots to other parties in each of the remaining three blocks in the subdivision. None of these deeds included any use restrictions.

Beginning in about 1949, however, Hunter began placing restrictions in the deeds to the lots which he sold confining the use thereof to residential purposes. These restrictions were not uniform in language, nor did they refer to any other deed to lots in the subdivision. The deeds to appellants, Fields and Hrnciar, and appellee, Pillers, were in this latter category.

The plaintiff, Pillers, acquired his lots in April, 1956, and the deed from Hunter forbade his placing upon the lots any structure "except a newly constructed building for residential purposes, at a minumum [sic] cost of $5,000.00." The defendant, Fields, acquired his lots from Hunter in May, 1955, his deed providing that he should not use the property "save the construction of residence thereon which said residence shall be constructed entirely of new material with a cash value—the time of construction of not less than $5,000.00." Hrnciar acquired his lots from Hunter in 1959, the restriction in his deed being expressed in this manner: "No house is to be built on said property costing less than $5,000.00," but no mention was made of the *use* of the "house", i. e., residential or otherwise. Other variations in the use restrictions are to be found in other deeds offered in evidence, but the foregoing ré-

sumé is sufficient to disclose the absence of any definite and uniform plan for the development of the addition.[1]

The addition is located upon a relatively narrow strip of land on the east and west sides of Main Street of the Town of Shamrock. Main Street is also State Highway 83. Blocks 201 and 202, each containing twelve lots, lie to the west of Main Street, north of Sixteenth Street and south of Eighteenth Street. Block 203 is immediately to the north of Eighteenth Street, west of Main Street and contains twenty-two lots. Block 204 is a long block containing twenty-five lots extending from Sixteenth Street to the northern end of the subdivision at Nineteenth Street. All of the lots in Block 204 are east of Main Street.

At the time of the sales previously mentioned herein, the highway traffic through the Town of Shamrock in an east-west direction moved along Twelfth Street as a part of U.S. Highway 66; but in connection with the interstate Highway System and the construction of Interstate 40, the State acquired all of Blocks 201 and 202, except the land of plaintiff Pillers. The State also acquired the southern half of Block 204 south of Eighteenth Street. The plans for Interstate 40 include an underpass at Main Street and access roads parallel to the divided highway on IH 40. The right-of-way for the new highway will extend to the south line of Pillers' property, some twenty feet from his home as located upon his lots.

While the evidence was not developed in detail, Pillers did testify, without objection, that the construction of the new highway adjacent to his home would create "an intolerable condition" which would prevent his living in and enjoying his home. Also, without objection, he asserted that he had invested about $32,000.00 in his land and improvements. Pillers had procured an appraisal of his property which took into consideration the presence of the new interstate facility; and, according to Pillers, this appraisal showed his land and improvements to have a market value, *with* restrictions on use as residential property, of $7,800.00. On the other hand, the market value *without* such restrictions would be $52,800.00. Upon cross-examination, he admitted that he had a sale for the property, contingent upon the cancellation of the restrictions upon use, of $85,000.00.

Both Fields and Hrnciar testified, generally and without objection, that the cancellation of the restrictions upon Pillers' property would adversely affect the market value of their respective homes. No rebuttal of this testimony was offered.

The jury found: (1–A) that Hunter represented to the appellant, Fields, that he "intended as a plan that the use of lots in Vaughan's Hill Top Addition be restricted to residential purposes"; (1–B) that Fields relied upon such representation when he

---

1. We adopt this summary of the evidence found in appellee's brief relating to the restrictions involved:

"We submit that you could hardly find a group of alleged restrictions from a common grantor with more lack of uniformity or that would less exemplify a general plan or scheme. There is no uniformity as to price, one being for $6,000.00, six for $5,000.00 and one without any price, or to the specific character of the buildings, whether residential or business. Three of the restrictions contain forfeitures for violations while five do not, and one restricts against livestock, and the seven others do not. One prohibits roads through the lots to other property while the other seven do not. Two restrict against old buildings being moved onto the property, one restricts against 'any' buildings being moved onto the property, while five others have no restrictions at all in this respect. And, finally, one, and only one, executed in July, 1952, attempts to extend the restriction to other property 'within a radius of 500 feet' from Lots 11 and 12, Block 204, which occurred after over one-half of the lots in the entire Addition had already been sold, and thus not applicable to them; and, * * * the 500-foot radius would not include many lots in the Addition. Moreover, in none of the deeds is there any provision that the covenants are to run with the land."

purchased his lots in the addition; (1–C) that Hunter inserted the residential use restriction "in furtherance of such plan" mentioned in 1–A; (1–D) that the market value of Field's lots "will be impaired by a removal of any residential use restrictions" in the addition. A further finding (No. 2) was to the effect that Hunter included a residential use restriction in the deed to Pillers "in furtherance of his plan, if any, for restricting the use of lots" in said addition to residential purposes. The jury also found (No. 3) that the market value of Hrnciar's lots would be impaired by the removal of "any residential use restrictions" in the addition.

In answer to Special Issue No. 4, the jury found that changes "in the vicinity of" Pillers' lots "have rendered the said lots reasonably unfit for residential purposes." Both sides having moved for judgment, that of plaintiff was granted and that of defendants denied, and this appeal follows.

### Opinion

One of our appellants is Louise Bear, the daughter of E. C. Hunter (original grantee) and Stella Hunter. This defendant was the grantee in a deed from Hunter conveying ten lots (out of twenty-two in Block 203) and her deed contained no restrictions whatsoever. This deed was dated in 1947, long prior to Pillers' deed. The property so conveyed to Louise Bear is immediately across Eighteenth Street north of Pillers and both parcels are upon the west side of Main Street. However, there are no improvements situated upon the lots immediately across Eighteenth Street from Pillers' property. Mrs. Bear answered individually, as Administratrix of the Estate of E. C. Hunter, Deceased (and his sole heir at law), and as Guardian of the person and estate of Stella Hunter, an incompetent person. She did not allege that Hunter's estate owned unsold lots in the subdivision.

Mrs. Bear complains that the trial court erred in setting aside the restrictive covenants found in Pillers' deed from Hunter. She contends that she is in privity with Pillers and entitled to enforce (or at least have maintained in effect) the restrictive covenants in issue herein. Pillers' deed provided for reverter in the event of violation of the restrictive covenant, the language being quoted in the margin.[2]

She then claims that the rights so retained by the grantors were not personal to them and that she succeeded to such rights of reverter as an heir of the grantors. From this premise, she argues:

"If this judgment is allowed to stand as against Louise Bear, then it has set Appellee up in business to make big money profits at the expense of Appellant, Louise Bear, whose contractual rights of reversionary possession [in the event Pillers uses the premises for other than residential purposes] and all other rights held by her under this conveyance will have been destroyed without any compensation to her whatsoever."

Assuming, *arguendo*, that in one or all of the several capacities in which she appeared, Mrs. Bear was entitled to assert a reversionary interest in the event of the breach of this restrictive clause by Pillers, we disagree with her conclusion and overrule her point eight for the reasons now to be stated.

In Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318, 321 (1935), the court held that:

"In every case where parties seek to enforce a restrictive covenant the burden of proof is upon them to establish that the covenant was imposed on defendant's land for the benefit of land owned by them. It is also well settled that in the

---

2. " * * * in case of any violation of the above, then the conveyance hereunder shall be null and void, and the said land and premises shall absolutely revert to the grantor herein, his heirs or assigns; * * * "

absence of proof that a restriction was imposed for the benefit of other land, it is construed as a personal covenant merely with the grantor. In many instances it is held that unless it is expressly shown in the conveyance itself that the restriction is imposed for the benefit of other land, or unless there is an obvious purpose to sell in accordance with a general plan, the covenant must be construed as merely a personal one."

See also, Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465, 470 (1941), wherein the court said:

"Restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubt should be resolved in favor of the free and unrestrictive use of the premises."

We have previously alluded to the fact that at the time Mrs. Bear acquired her property in the subdivision, Hunter had not inserted any restrictions in any of the deeds, nor does the evidence disclose that any "general building scheme or plan for the development of a [the] tract of land has [had] been adopted." Curlee v. Walker, 112 Tex. 40, 244 S.W. 497, 498 (1922), quoting from Hooper v. Lottman, 171 S.W. 270, 272 (Tex.Civ.App.—El Paso, 1914, no writ). There was, consequently, no mutuality of covenant or agreement between the original owners and the purchasers of the several lots in the addition. Hooper v. Lottman, supra. For a discussion of many cases upon the subject, see Interstate Circuit, Inc. v. Pine Forest Country Club, 409 S.W.2d 922, 925 (Tex.Civ.App.—Houston, 1966, error ref. n. r. e.).

Nor are we persuaded that Bethea v. Lockhart, 127 Tex.Civ.App. 1029 (Tex.Civ.App. —San Antonio, 1939, error ref.), relied upon by appellants, dictates a contrary holding. The factual basis of *Bethea* bears no resemblance to the situation which we have before us, as we now demonstrate.

The facts in this case, as established by the uncontroverted evidence and as found by the jury, clearly show the reasons why the restriction found in Pillers' deed should be set aside: the drastic change in conditions in the area brought about by the action of third parties in the location of Interstate Highway 40. Appellants place great reliance upon Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943 (1958), a well-reasoned opinion by Chief Justice Calvert. Several rules are postulated in *Cowling*, two of which we now summarize.

(1) Such a restriction may be denied enforcement because "there has been such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant." [312 S.W.2d at p. 945]

(2) "A court may not refuse to enforce a residential-only restriction against a particular lot on the *sole ground* that a change of conditions has rendered the lot unsuitable for residential purposes and it would therefore be inequitable to enforce it. The equities favoring the particular owner is only one facet of the judicial inquiry." [Id. at p. 946]

In this declaratory judgment action, Pillers has discharged his burden of proving the changes in the area of the subdivision have been of such a nature that the servitudes have become unenforceable. Simon v. Henrichson, 394 S.W.2d 249, 254 (Tex.Civ.App.—Corpus Christi, 1965, error ref. n. r. e.). The particular special issue submitting the change in conditions (No. 4), appears to have been adapted from that quoted in Overton v. Ragland, 54 S.W.2d 240, 241 (Tex.Civ.App.—Amarillo, 1932, error dism.), wherein the court said:

"Changed conditions in a neighborhood brought about by agencies outside of the parties themselves will terminate a building restriction limiting or restricting property in use for residential purposes only. Abernathy v. Adoue (Tex.Civ.

App.) 49 S.W.2d 476." [54 S.W.2d at p. 243]

See also, Stewart v. Valenta, 361 S.W.2d 910, 915 (Tex.Civ.App.—Eastland, 1962, error ref. n. r. e.), and cases therein cited.

The evidence in our case, as in *Stewart*, supra, "shows a change which is so radical 'as practically to destroy the general or essential objects and purposes' of a restrictive covenant. 26 C.J.S. Deeds § 171, p. 1178; Scanlon v. Dewhurst, Tex.Civ.App., 197 S.W.2d 518." [361 S.W.2d at p. 916]

Appellants' points one and two, challenging the finding of a change in conditions, are each overruled.

■ Appellants contend that it was error for the trial court to enter judgment setting aside the restriction on Pillers' lots because the jury had found in answer to Nos. 1–D and 3 that the market value of the lots of Fields and Hrnciar would be impaired by such removal. Again, appellants rely principally upon Cowling v. Colligan, supra, pointing to the theory of "balancing of equities or of relative hardships" mentioned in the opinion. [312 S.W.2d at p. 946] For the reasons set out earlier, we are of the opinion that *Cowling* is not controlling in the case at bar. The lack of a general plan or scheme for the development of the addition has been mentioned; and, in addition to the authorities previously cited, we call attention to these: Pierson v. Canfield, 272 S.W. 231, 232 (Tex.Civ.App.—Dallas, 1925, no writ); Brehmer v. City of Kerrville, 320 S.W.2d 193, 195 (Tex.Civ.App.—San Antonio, 1959, no writ); Goodman v. Bingle, 48 S. W.2d 432 (Tex.Civ.App.—Galveston, 1932, no writ).

Appellants have not brought themselves within the rule of "balancing of equities" or "relative hardships" as mentioned in *Cowling*. Neither Fields nor Hrnciar testified as to the *amount* of damage to or diminution in value of their respective lots which would result from the cancellation of the restrictions upon Pillers' lots. Both contented themselves with the bald and unsupported statement that the value would be diminished. The findings of the jury are equally deficient. As was pointed out by Pillers in his motion to enter judgment:

"These findings are entirely immaterial for the reason that this is not the test as a matter of law and will not support a judgment in favor of the Defendants, nor will it defeat a judgment for the Plaintiff declaring the purported restrictions in his deed to be null and void as to the Defendants as this is not a finding that either of the Defendants or, in fact, any Defendant, would be damaged by reason of the removal of the restrictions on the Plaintiff's lots."

■ Pillers sought no cancellation of restrictions upon the lots of either Fields or Hrnciar; and, if either of these parties sought to claim the benefit of the balancing of equity doctrine, it was incumbent upon them to tender evidence and procure findings which would authorize the trial court to apply the doctrine. Appellants did neither, and now fail to show reversible error.

We have reviewed the remaining points brought forward, and finding no error to be shown thereby, the judgment of the trial court is in all things affirmed.